UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN ROBINSON, *Plaintiff* | |
| | CIVIL NO. 02-CV-1943 (CFD) |
| VS. | |
| MICHAEL L. HOLLAND, | **JURY DEMAND** |
| JERRY L. WAWRZYK, | |
| RANDY R. SABETTINI, | |
| JOHN E. DEARY, | |
| JOHN NORWOOD, | |
| JOHN FALK, | |
| STEVE FAUCHER, | |
| STEVE A. RHODES, | |
| KEVIN M. MANLEY, | |
| WILLIAM D. FANEUFF, | |
| ERIC SEIFFERT, | |
| NEAL H. KEARNEY, | |
| B. CORREIA, | |
| DANIEL K. LYNCH, | |
| WILBUR L. STROZIER, | |
| ROBERT D. AMES, | |
| RICHARD L. FELTON, | |
| T. MITCHELL, | |
| P. A. KUHLMAN, JR., | |
| M. STUCENSKI, | |
| THOMAS, | |
| D. SMITH, | |
| J. KNAPP, JR., | |
| L. DAIRE, | |
| B. CHAPMAN, | |
| GERMOND, | |
| RAYMOND BERNARD, | |
| CHERYL SCHREINDORFER, | |
| JOHN ZIERDT, JR. | |
| SCOTT REID, | |
| ANTHONY NAPIER, | |
| B. D. BENDELOW, | |
| J. TAVARIEZ, | |
| PLUTE, | |
| D. RYAN, II, | |
| MICHAEL LAJOIE, | |
| MICHAEL W. ZACHAREWICZ, | |
| PATRICK WILCOX, | |
| PEPE, | |
| LARRY J. MYERS, | |
| AND JOHN DOE, ONE THROUGH SIX, *Defendants* | 17*TH* DECEMBER 2003 ~~NOVEMBER~~ 17, 2003 |

**SECOND AMENDED COMPLAINT**

## FEDERAL LAW CLAIMS

1. This is an action for money damages to redress the deprivation by the defendants, individually, of the rights secured to the plaintiff by the Constitution and the laws of the United States. The defendants having undertaken and obligation to the plaintiff not to subject him, as a sentenced prisoner, to any cruel and unusual punishment, disregarded that duty by inflicting force and personal injury upon the plaintiff to cause harm and this force and personal injury were not applied in a good faith effort to maintain or restore discipline. Defendant Michael L. Holland, with the complicity and the assistance of defendants, Jerry L. Wawrzyk, Randy R. Sabettini, John E. Deary, John Norwood, Steve A. Rhodes, John Falk, Steve Faucher, Kevin M. Manley, William D. Faneuff, and B. Correia subjected the plaintiff to physical injury, unreasonable force, and the withholding of needed medical treatment.

## JURISDICTION

2. This action is brought pursuant to section 1983, 1986 and 1988 of Title 42 of the United States Code and the Eighth and Fourteenth Amendments. Jurisdiction is founded on 28 U.S.C. 1331 and 1343 (1)(2)(3)(4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this court to consider claims arising under state law sounding in tort, pursuant to 28 U.S.C. 1367(a).

## PARTIES

3. During all times mentioned in this complaint, the plaintiff was, and he still is, an adult citizen of the United States. He was in the custody of the Connecticut Department of

Correction and illegally confined at Northern CI in Somers, Connecticut at the time of the events described herein, and now resides in the State of New Jersey.

4.  During all times mentioned in this complaint, the defendants, Michael L. Holland, Jerry L. Wawrzyk, Randy R. Sabettini, John E. Deary, John Norwood, John Falk, Steve Faucher, Steve A. Rhodes, Kevin M. Manley, William D. Faneuff, Eric Seiffert, Neal H. Kearney, B. Correia, Daniel K. Lynch, Wilbur L. Strozier, Robert D. Ames, Richard L. Felton, T. Mitchell, P. A. Kuhlman, Jr., M. Stucenski, Thomas, D. Smith, J. Knapp, Jr., L. Daire, B. Chapman, Germond, Raymond Bernard, Cheryl Schreindorfer, Michael Lajoie, Michael W. Zacharewicz, Pepe, Patrick Wilcox, Larry J. Myers, John Doe One-a caucasion male, John Doe Two (2), a caucasion male, John Doe Three (3), a Caucasian male, John Doe Four (4), a Caucasian male, John Doe Five (5), a Caucasian male, and John Doe Six (6), a Caucasian male, were duly appointed employees of the Department of Correction for the State of Connecticut at 24 Wolcott Hill Road, Wethersfield, Connecticut 06109. Each defendant is sued only in his individual capacity.

5.  During all times mentioned in this complaint, the defendants, John Zierdt, Jr., Scott Reed, Anthony Napier, B. D. Bendelow, J. Tavariez, D. Ryan, II, Plute, and James Doe, were employees of Transcor America, Inc., at 646 Melrose Ave., Nashville, Tennessee 37211, who were hired by the Connecticut Department of Correction to transfer Connecticut state prisoners to Virginia. Each defendant is sued only in his individual capacity.

6.  During all times mentioned in this complaint, all of the defendants acted under color of law, that is under color of the constitution, statutes, laws, rules, regulations, customs and usages of the State of Connecticut and the United States.

7. At all times mentioned in this complaint, the defendants acted jointly, in conspiracy and in concert with each other. Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendant but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries.

8. During all times mentioned in this complaint, the defendants and each of them separately and in concert acted jointly, willfully and in conspiracy with each other and each defendant aided and abetted the others in carrying out the acts and omissions described herein, and thereby deprived the plaintiff of his rights, secured to him by the First, Eighth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States and the State of Connecticut.

9. During all times mentioned in this complaint, and upon information and belief all defendants were on duty.

## FACTUAL ALLEGATIONS

10. On or about November 8, 1999, at or around 1400 hours, plaintiff Shawn L. Robinson was a Connecticut state prisoner at Northern Correctional Institution, in Somers, Connecticut, who was placed in full transportation restraints by employees of Transcor America, Inc.-Defendants B. D. Bendelow, Anthony Napier, and Plute for an administrative out-of-state transfer to Wallens Ridge State Prison in Big Stone Gap, Virginia.

11. At or about the date and time above, before plaintiff Robinson was transferred out-of-state to Virginia, Defendants Michael L. Holland, Jerry L. Wawrzyk, John E. Deary, Randy R. Sabettini, John Norwood and a number of other prison guards brutally beat and

tortured plaintiff Robinson without provocation, while plaintiff Robinson was in full restraints, defenseless.

12. Defendant Holland initiated this brutal attack on plaintiff Robinson, when he, for no justifiable reason, sprayed mace into the plaintiff's eyes and stated, "This is for my white brother, David Serkosky-Nigger," while plaintiff was urinating into a commode in holding cell four and still in full transportation restraints.

13. Just after the plaintiff was sprayed, Defendant Wawrzyk slammed plaintiff to the floor.

14. Just after the plaintiff was slammed to the floor, Defendant Sabettini kicked the plaintiff's eyeglasses off plaintiff's face.

15. When the plaintiff called out to Defendant Neal H. Kearney for help, due to his high ranking supervisory status as a major, Defendant Kearney only started to laugh at the plaintiff, along with all the other supervisors and prison guards who were present in the Admitting and Processing Area.

16. When Defendant Kearney failed to intervene and stop this brutal attack by his subordinates, and just laughed about it, more prison guards came into holding cell four and joined defendants Holland, Wawrzyk, Sabettini and Deary in brutally beating plaintiff Robinson.

17. The defendants beat plaintiff into another room and slammed plaintiff up against the wall of this room.

18. After plaintiff was slammed into the wall, the defendants began to torture plaintiff by pinning his body up against the wall and methodically inflicting injuries on his person.

19. Defendants Steve Faucher, Steve A. Rhodes, B. Correia, John Falk, T. Mitchell, B. Chapman, Germond and others held plaintiff while Defendant Deary and others dug their fingers and sharp objects into plaintiff's eyes, while other defendants struck plaintiff.

20. At the same time, Defendants Holland, Kevin M. Manley, William D. Faneuff, and others threatened to continue to mace and beat plaintiff if he did not open his eyes.

21. When the plaintiff was able to open his eyes, Defendant John Norwood threw some kind of hot, burning liquid into his eyes.

22. After Defendant Wilbur Strozier finished taking photographs of plaintiff, the defendants knocked plaintiff back to the ground and continued to beat him.

23. The defendants hog-tied plaintiff after knocking him down to the floor, and started pulling chunks of his hair out of his head.

24. The plaintiff was beaten all the way to and on the bus by defendants Faneuff, Faucher, Correia and others.

25. At no time did any of the defendants or medical staff at Northern CI give or offer plaintiff any medical treatment or to flush the mace from plaintiff's eyes, before or after they placed plaintiff on the bus.

26. After the plaintiff was brutally beaten and tortured by those defendants who worked at Northern CI, he immediately informed the Transcor America employees on the bus that he wished to be taken to the hospital for medical treatment, as well as talk to the State

Police or United States Marshals and have pictures taken of his bruises and injuries.

27. When the Transcor America employees stopped at Walker Reception Center to pick up some more Connecticut state prisoners to be transferred out-of-state to Virginia along with plaintiff, they informed some of the escorting defendants from Northern CI that plaintiff Robinson and Inmate Robert Joslyn, #212428 were asking the Transcor America employees to take them to the hospital and call the police against the Northern CI employees because they both wanted to press criminal charges against them and the other defendants at Northern CI who assaulted them.

28. Instead of taking plaintiff to the hospital, the defendants forced the plaintiff to walk off the bus on his injured legs and ankles without any aid, into a holding cell in Walker Reception Center, where there was a number of Connecticut Department of Correction employees waiting.

29. After plaintiff was interrogated by these prison employees and told them who assaulted him, defendants Raymond Bernard and Cheryl Schreindorfer conducted a perfunctory visual cursory examination of plaintiff's injuries while he was still in full transportation restraints.

30. After the visual examination, Defendant Schreindorfer asked the prison guards present to allow plaintiff to shower in order to decontaminate the mace he had been sprayed with but these guards said no.

31. Before plaintiff was loaded back on the bus and transferred out-of-state to Virginia, plaintiff asked the warden (Donahue) to notify the state police, because he wanted to press criminal charges against the guards at NCI-Somers for assaulting him, but he told

plaintiff that he would have to contact the state police on his own.

32. Plaintiff had to endure an Eighteen (18) hour bus ride in full transportation restraints with multiple severe injuries.

33. The next day on November 9, 1999, plaintiff arrived at Wallens Ridge State Prison in Big Stone Gap, Virginia.

34. Once plaintiff was taken off the bus and processed, he was taken directly to the facility's infirmary and hospitalize for several hours after informing Virginia state prison officials of what happened.

35. During the time plaintiff was hospitalized in the prison's infirmary, he was approached by a man in civilian clothes who identified himself as Captain Maynard from Connecticut.

36. Plaintiff thought this person was a Connecticut State Police Officer and told him what happened in Connecticut at NCI-Somers.

37. Captain Maynard took pictures of some of the plaintiff's bruises and injuries, while plaintiff was in restraints.

38. The following day, on November 10, 1999, several Virginia State prison officials came to plaintiff and took pictures of some of plaintiff's bruises and injuries while he was in restraints.

39. The prison doctor at Wallens Ridge State Prison had ordered that plaintiff be examined by a back specialist and have a CAT scan done for his head injuries, but plaintiff never received this treatment after the doctor was transferred to another prison.

40. Because plaintiff was housed in an out-of-state prison, the formal Department of Correction inmate grievance forms were not available to plaintiff. However, after plaintiff received some of his personal property form Connecticut and had received stationary, plaintiff wrote complaints and letters to Connecticut law enforcement agencies, state and federal officers, including the Director of Transcor America, Inc., Commissioner of Corrections and the Commission on Human Rights and Opportunities, regarding the brutal assault on November 8, 1999.

41. When the Connecticut Department of Correction acknowledged receipt of plaintiff's grievances about DOC staff at Northern CI brutally assaulting him and denying plaintiff medical treatment on November 8, 1999, they told him that his allegations were under investigation by the State Police, and his complaint would be answered afterwards.

42. Connecticut prison officials informed the plaintiff that they had no control over what kind of medical treatment Virginia gave to him because he was no longer in their custody.

43. However, Connecticut prison officials were able to control keeping plaintiff confined in segregation while he was warehoused in Virginia's State Prison system.

44. Prior to this incident on November 8, 1999, plaintiff requested to be transferred out of Connecticut or Northern CI because he was having some serious problems with some of the defendants and guards at Northern CI.

45. Plaintiff Robinson had lodged a number of complaints against some of these defendants and other prison guards at Northern CI for assaults, threats and constant

harassment against him, but Defendant Myers and other DOC officials refused to move plaintiff or these guards.

46. The defendants at Northern CI planned this attack against plaintiff because they saved plaintiff for last and told him that they were going to get him before he left.

47. After plaintiff was put in Northern CI, DOC staff David Serkosky started working there, and staff harassment escalated against the plaintiff, because all of the employees that worked at Northern CI were made aware that the plaintiff was convicted for assaulting Serkosky, and this created a great deal of animosity towards plaintiff.

48. Before plaintiff was sent to Northern CI and arbitrarily placed on Administrative Segregation, he was a level four (4) Connecticut state prisoner being confined in the Federal prison system.

49. Plaintiff was told by the Connecticut Interstate Compact Office and Director of Classification that he would remain at level four as long as he was out-of-state, but if he was transferred back to Connecticut, his security risk level would be increased to a level five (5), and he would be placed in Administrative Segregation.

50. Neither of the defendants made any effort to either restrain the other co-defendants, contrary to their duty and obligation, or to protect the plaintiff, or prevent the violations of the plaintiff's rights, despite their being in a position to do so.

51. As a consequence of the actions of the defendants herein described, and the omissions of the defendants, the plaintiff suffered injuries to his eyes, face, head, neck, mouth, back, stomach, groin, arms, legs, wrists, ankles, ears and knees.

52. As a result of the defendants' assault, the plaintiff suffered physical pain and disability and fear for his life, creating mental and emotional anguish and distress.

53. The defendants, by uniting in an act which constituted a wrong to the plaintiff, and by performing it under circumstances which fairly charge them with intending the consequences which follow, incurred a joint and several liability for the acts of each and all of the joint participants. All of the defendants actively participated in the above-described wrongful acts and willful misconduct by cooperation or request, and as to each act complained of lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

54. In the manner described in this complaint, the defendants and each of them, separately and in concert, deprived the plaintiff of his rights to be free from cruel and unusual punishment, to freedom of speech, freedom of petition for redress of grievances, free from the conspiracy to deprive him of his civil rights and due process of law. All of these rights are secured to the plaintiff by the provisions of the First, Eighth and Fourteenth Amendments to the United States Constitution and by Title 42 U.S.C. 1983.

## COUNT TWO: STATE LAW CLAIMS

55. Pursuant to the provision of 28 U.S.C. 1367, the supplemental jurisdiction of this court is invoked as to the claims of this count which arise under the statutes and common law of the State of Connecticut.

56. This is an action for money damages to redress the deprivation by the defendants rights, secured to the plaintiff by the State of Connecticut. The co-defendants with

the assistance, complicity and in conspiracy with each other, subjected the plaintiff to assault and battery, false imprisonment and the intentional infliction of emotional distress.

57.     Paragraphs 3 through 54 of Count One are hereby incorporated as paragraphs 3-54 of Count Two.

58.     In the manner described above, the defendants and each of them committed assault and battery, in that they attempted with force and violence to do corporal offense to the plaintiff, and were successful in that attempt, by inflicting upon the plaintiff's person severe physical injury without any justification or excuse. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff, as set out in paragraphs 10 through 43 in Count One, above. The plaintiff is protected against such conduct by the defendants under Connecticut law. The provisions of which are invoked under this Court's supplemental jurisdiction.

59.     In the manner described above, the defendants further committed the tort of intentional infliction of emotional distress, in that they intentionally and/or recklessly caused the plaintiff severe emotional distress by their intentional, extreme and outrageous conduct, as described above. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff, as set out in Count One above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provisions of which are invoked under this Court's supplemental jurisdiction.

60.     The defendants subjected the plaintiff to the tort of negligence in the performance of their correctional duties, in that they jointly and severally owed him a duty to protect him from injury, inasmuch as he was in their custody. Therefore, insofar as each

defendant allowed the plaintiff to be subjected to illegal and tortuous conduct by the others, as detailed above. They are liable for their breach of the duty owed by a correctional employee to a person in their custody. The acts and omissions of the defendants as outlined above, were the proximate cause of damage to the plaintiff, as set out in Count One above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provisions of which are invoked under this Court's supplemental jurisdiction.

61.     The defendants subjected the plaintiff to false imprisonment, in that they acted in a manner designed to illegally confine the plaintiff in punitive and administrative segregation. They forced him to be aware of his segregated status, lacking legal justification for the segregation. They had no privilege to so segregate him. The plaintiff's right to be free of such treatment by duly authorized correctional officers is protected by the provisions of the laws of the State of Connecticut, which are invoked under this Court's supplemental jurisdiction.

WHEREFORE, the plaintiff claims judgment against the defendants, and against each of them jointly and severally, as follows:

A. Compensatory Damages;

B. Punitive Damages;

C. Attorney's fees and the costs of this action; and

D. Such other and further relief as this Court shall consider to be fair and equitable.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF,

By *Shawn L. Robinson*
Shawn Robinson, PRO SE
#430720
P.O. Box 861
Trenton, NJ 08625-0861