Shawn Robinson
#430720-OS01503529
New Jersey Sate Prison
P.O. Box - 861
Trenton  NJ  08625

**Plaintiff - Pro Se**

2005 ... -2  A. 00

---

SHAWN ROBINSON,                :
                               :
             Plaintiff,        :
                               :
V.                             :
                               :
MICHAEL HOLLAND, et. al.,      :
                               :
             Defendants.       :
                               :
---

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**CIVIL ACTION NO.**

**3:02-cv-1943(CFD)   TPS**

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO**

**DEFENDANT'S MOTION FOR DISMISSAL**

---

## TABLE OF CONTENTS                    **Page**

PRELIMINARY STATEMENT...................................  1

STATEMENT OF FACT AND PROCEDURAL HISTORY................  8

**LEGAL ARGUMENT (s)**

**POINT I**

   NONE OF THE DEFENDANTS ARE ENTITLED TO DISMISSAL
   AND PLAINTIFF'S CIVIL ACTION IS NOT BARRED BECAUSE
   HE HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES.
   ................................................... 10

**POINT II**

   PLAINTIFF HAS ALLEGED PERSONAL
   INVOLVEMENT AS TO ALL DEFENDANTS.
   ................................................... 11

**POINT III**

   THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.
   ................................................... 17

**POINT IV**

   NONE OF THE DEFENDANTS ARE ENTITLED TO STATUTORY
   IMMUNITY UNDER CONNECTICUT GENERAL STATUTES 4-165.
   ................................................... 19

**POINT V**

   PLAINTIFF WAS HELD IN ADMINISTRATIVE SEGREGATION
   IN VIOLATION OF HIS RIGHT TO DUE PROCESS.
   ................................................... 20

**POINT VI**

   PLAINTIFF HAVE MADE EVERY GOOD FAITH EFFORT TO
   EXECUTE SERVICE UPON THE DEFENDANTS AND
   SHOULD THEREFORE BE ALLOWED TO PROCEED.
   ................................................... 21

CONCLUSION   ......................................... 24

## TABLE OF CASES

                                                              **Page**

Allen v. Westpoint Pepperell, Inc., 945 F.2d 40....... 13

Black v. Coughlin, 76 F.3d 72.......................... 15

Concepcion v. Morton, 306 F.3rd 1347.................. 2

Conley v. Gibson, 355 U.S. 41......................... 12-13

Easton v. Sundram, 947 F.2d 1011...................... 13

Goldman v. Belden, 754 F.2d 1059...................... 13

Harlow v. Fitzgerald, 457 U.S. 800 ................... 17

Leatherman v. Tarrant County Narcotics Intelligence and
Coordination Unit, 113 S.ct 1160..................... 13

McCann v. Coughlin, 698 F.2d 112...................... 16

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119....... 12

Ryder Energy Distribution v. Merrill Lynch Commodities,
Inc., 748 F.2d 744................................... 12

Seigert v. Gilley, 500 U.S. 226 ...................... 17

Williams v. Smith, 781 F.2d 319....................... 16

Wolf v. McDonnell, 94 S.Ct 2963 ...................... 21

Wright v. Smith, 21 F.3d 496.......................... 15

United Mine Workers v. Gibbs, 383 U.S. 715............. 20

## RULES CITED

F.R.Civ.P. 12 (b)(6)................................. 12
F.R.Civ.P. 8........................................ 12
F.R.Civ.P. 8(a)(2).................................. 13

## STATUTES CITED

Conn. Gen. Stat. §4-165.............................. 19
42 U.S.C. §1983.................................. 10, 15, 17

## PRELIMINARY STATEMENT

Defendants motion for dismissal or for Summary Judgment should be denied because:  (1) plaintiff have exhausted his administrative remedies pursuant to the Prisoners Litigation Reform Act (P.L.R.A.);  (2) the defendants are not entitled to Qualified Immunity because their conduct violated plaintiff's constitutional rights; and (3) counsel for the defendants have intentionally delayed filing a formal answer to the complaint for no other reason but to circumvent plaintiff's right to seek redress via the court system.  Furthermore, defendants have made every effort to deny plaintiff his right to seek redress by transferring him to various prisons and separating plaintiff from his personal property for extended periods of time.

Plaintiff, Shawn Robinson, #OS01503529-430720, is an inmate presently confined at New Jersey State Prison, located at P.O. Box 861, Trenton  New Jersey, 08625.  Plaintiff contends and intends to prove that defendants, Michael L. Holland, Jerry L. Wawrzyk, Randy R. Sabettini, John R. Deary, John Norwood, John Falk,  Steve Faucher, Steve A. Rhodes, Kevin M. Manley, William D. Faneuff, Eric Seiffert, Neal H. Kearney, B. Correia, Daniel K. Lynch, Wilbur L. Strozier, Robert D. Ames, Richard L. Felton, T. Mitchell, P.A. Kuhlman, Jr., M. Stucenski, Thomas D. Smith, J. Knapp, Jr., L. Daire, B. Chapman, Germond, Raymond

Bernard, Cheryl Schreindorfer, John Zierdt, Jr., Scott Reid, Anthony Napier, B.D. Bendelow, J. Tavariez, Plute, D. Ryan, II, Michael Jajoie, Michael W. Zacharewicz, Patrick Wilcox, Pepe, Larry J. Meyers, and John Doe, one through six, violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution by using excessive force, subjecting him to cruel and unusual punishment, being deliberately indifferent to plaintiff's serious medical needs, and denying him due process.

Defendants motion to dismiss must be denied because the record is clear that plaintiff have exhausted his administrative remedies. Plaintiff concedes that pursuant to the **P.L.R.A.** (Prisoners Litigation Reform Act) and <u>Concepcion v. Morton,</u> 306 <u>F.3rd</u> 1347 (3rd Cir. 2002), as an inmate, he's required to exhaust his administrative remedies before bringing suit. Plaintiff attempted to bring attention to what happened to him while at the Northern Correctional Institution (Northern CI) in Somers, Connecticut, every chance he got. Soon as he was placed on the bus to be transferred he informed the Transcor America workers that he wished to be taken to the hospital for medical treatment and he wanted to speak with the State Police or United States Marshals and have photos taken of his injuries.

Plaintiff was paid no attention and transported to Walker Reception Center (Walker RC) to pick up other Connecticut inmates scheduled for transfer out of State to somewhere in Virginia. While at Walker RC the Transcor workers informed the escorting officers who worked at Northern CI that plaintiff and an inmate Robert Joslyn #212428 are asking to be taken to the hospital and to call police because they wanted to press criminal charges against all the defendants who assaulted them both.

Plaintiff was taken off the bus in full restraints and escorted to a holding cell inside Walker RC where there were a number of Connecticut DOC employees waiting. After plaintiff was interrogated by D.O.C. employees and told them who had assaulted him, defendants Bernard and Schreindorfer conducted a visual examination of his injuries. After the examination, defendant Schreindorfer asked the officers of Walker RC to allow plaintiff to shower in order to remove the mace plaintiff had been sprayed with and the officers said "no". Before plaintiff was loaded back on the bus for transportation he asked the Warden of Walker RC, Donahue, to call the state police because he wanted to press criminal charges against the employees at Northern CI for assaulting him, however, Donahue informed plaintiff he would have to contact the police on his own. After 18 hours

-3-

on the bus and in pain, plaintiff arrived at Wallens Ridge State Prison (Wallens Ridge) in Virginia, on November 9, 1999. Once off the bus and processed, plaintiff was taken directly to the infirmary and hospitalized for several hours after informing Wallens Ridge Officials of what happened. While hospitalized, plaintiff was accosted and interrogated by someone in civilian clothes who identified himself as Capt. Maynard from Connecticut. After plaintiff explained what had happened to him Capt. Maynard took photographs of some of plaintiff's injuries. On November 10, 1999, several officials from Wallens Ridge came to plaintiff and took photographs of some of his injuries too. The doctor at Wallens Ridge ordered various treatments for plaintiff, but none was ever provided and when plaintiff requested to see the same doctor again he was told the doctor was transferred to another facility.

Once plaintiff was briefly reunited with his personal property he immediately took to the task of writing complaints and letters to Connecticut Law Enforcement Agencies, State and Federal Officials, including the director of Transcor America, Inc., Commissioner of Corrections, and the Commission on Human Rights and Opportunities, regarding the brutal assault on November 8, 1999. Plaintiff received a response from the

-4-

Connecticut Department of Corrections regarding his complaint of being assaulted and denied medical treatment on November 8, 1999, while at Northern CI informing him that his allegations were being investigated by State Police and his complaint would be answered afterwards. The exhaustion requirement serves to provide prison officials notice of the contentions complained of in hopes that they will take appropriate corrective action. Here, it's clear that plaintiff have taken the necessary measures of satisfying the requirements of the **P.L.R.A.** and the defendants have done nothing to even address plaintiff's concerns, much less take any type of corrective action. Therefore, defendants motion must be denied.

Next, the defendants are not entitled to qualified immunity because they have violated the State and Federal Constitutions. Prior to November 8, 1999, plaintiff had requested a transfer out of Northern CI because he was having serious problems with a number of the defendants and other guards at Northern CI. These problems stemmed from plaintiff having lodged complaints against them for assaults, threats, and constant harassment against him. However, defendant Meyers and other DOC officials refused to transfer plaintiff or the guards. Also, soon after plaintiff was placed in Northern CI, DOC staff David Serkosky

-5-

started working there and the harassment against plaintiff really began to escalate because, everyone knew plaintiff was convicted of assaulting Serkosky and this created even more animosity and harassment towards plaintiff.

The defendants at Northern CI carefully planned the brutal attack on plaintiff and those who didn't actively participate in the beating stood by and allowed plaintiff to be savagely beaten. They intentionally saved plaintiff for the last person to be processed out so he would be alone and they could assault him.

Plaintiff intends to provide evidence and testimony through discovery and independent sources to establish that defendants were well aware of his concerns for his safety and welfare and they took no precautions to prevent the attack upon him. Moreover, defendants Meyers and Kearney did absolutely nothing to ensure that excessive force was not used in Northern CI and, in fact, by turning their back on what had taken place actually supported it.

Additionally, the evidence intended to be presented in this case will not only prove the defendants plotted and planned the attack on plaintiff, but they laid in wait to carry out their assault at a time when plaintiff was most vulnerable,

-6-

in full restraints.  Plaintiff acknowledge that an officer may use "reasonable force" when confronted with a threat to the safety of the institution or staff, however, it is readily apparent that at no time did plaintiff pose a threat to anyone. As a matter of fact, plaintiff was elated to be leaving Northern CI because it represented an end to the constant threats and harassment he had been experiencing.

As a direct consequence of the attack upon plaintiff, he sustained injuries to his eyes, face, head, neck, mouth, back, stomach, groin, arms, legs, wrists, ankles, ears, and knees. There was so much disdain for plaintiff that the defendants even resorted to tearing his dreadlocks out of his head.  Prior to the attack upon plaintiff he was a healthy, energetic, and athletic type of individual.  Though most of his injuries have healed over the years, plaintiff continue to suffer from the psychological trauma of this entire ordeal.  Simply stated, the force used upon plaintiff was totally unreasonable and yes, absolutely un-necessary.  The record in this case is clear and full of legitimate concerns that can only be resolved through litigation.

Thus, the defendants are not entitled to dismissal of this action because plaintiff is more than able to adduce evidence

-7-

where a jury could determine that plaintiff was assaulted and
the defendants named herein are responsible. Furthermore, a
material question of fact does exist in this case and plaintiff
should be permitted to proceed. Finally, it is submitted that
all previous delays in the filing of this suit can be attributed
to the defendants orchestrating numerous transfers of plaintiff
to different administrative segregation units, plaintiff being
separated from his personal property for extended periods of
time, and plaintiff's inability to commence this action without
assistance. As soon as plaintiff was united with his personal
property and released to general population he commenced suit.

## COUNTER STATEMENT OF FACTS AND PROCEDURAL HISTORY

Prior to November 8, 1999, plaintiff was incarcerated at
Northern CI where he was being harassed and threatened on a
daily basis. Plaintiff wrote to various officials concerning
what he was experiencing but, no one responded to his concerns.
Soon after plaintiff arrived at Northern CI, DOC staff David
Serkosky started working there and it became common knowledge
amongst the officers that plaintiff was convicted of assaulting
Serkosky. As a result of this knowledge the threats and
harassment plaintiff was experiencing only intensified.

-8-

Plaintiff again wrote various state and federal officials in regards to what was happening to him and requested to be transferred to avoid the nonsense that was going on. Again, plaintiff's request was not formally responded to. On November 8, 1999, plaintiff was placed in full transportation restraints by employees of Transcor America, Inc. for what he thought was a response to his request to be transferred.

Plaintiff was transferred but, not before he was savagely and brutally beaten by guards at Northern CI, the defendants herein. This beating took place under the watchful eye of defendant Kearney whom were the supervisor in charge and who did nothing but laugh while the incident was taking place.

Immediately after the beating of plaintiff, he was placed on a bus and transferred to Walker RC without being allowed to see a doctor even though he requested and needed to. He was not allowed to see a doctor until he arrived at Wallens Ridge on November 9, 1999, some 19 hours after the initial assault. Plaintiff's injuries are documented and he have made every effort to address and resolve the unprovoked assault upon him administratively, all of his efforts have been to no avail.

At the behest of the Connecticut Department of Corrections and Officials, plaintiff was placed in administrative segregation

-9-

at every prison he was transferred to and this was done without plaintiff ever being charged or provided due process. Soon as plaintiff was released from administrative segregation and united with some of his personal property, he sought the assistance of a paralegal to assist him in filing this suit. The defendants herein have made every effort to prevent plaintiff from addressing what they did to him and even now they still haven't formally responded to plaintiff's complaint even though they know his claims are legitimate.

### POINT 1
THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THIS ACTION AND THE PLAINTIFF'S ACTION IS NOT BARRED BECAUSE HE HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act of 1996, **(PLRA)** requires prisoners asserting a claim pursuant to 42 U.S.C. §1983 to first exhaust administrative remedies. Plaintiff Robinson affirms that he did in fact, exhaust his administrative remedies upon every available opportunity. Plaintiff attempted to bring attention to what happened to him while at Northern CI by writing letters to Connecticut Law Enforcement Agencies, State and Federal Officials, including the director of Transcor America Inc., Commissioner of Corrections, and the Commission on Human Rights and Opportunities. Plaintiff received a response from

-10-

the Connecticut Department of Corrections regarding his complaint "informing him that his allegations were being investigated by State Police and his complaint would be answered afterwards." However, as far as plaintiff is aware, that is the extent to which his concerns were formally addressed.

The exhaustion requirement serves to provide prison officials notice of the contentions complained of in hopes that they will take appropriate corrective action. Here, it's clear that plaintiff have taken the necessary measures of satisfying the requirements of the **P.L.R.A.** and the defendants have done nothing to even address plaintiff's concerns, much less take any type of corrective action. Apparently, defendants concede that plaintiff made every effort to conform with the **P.L.R.A** exhaustion requirements because they fail to even address it.

### POINT II

#### PLAINTIFF HAS ALLEGED PERSONAL INVOLVEMENT AS TO ALL DEFENDANTS

In their motion to dismiss, the defendants have stated that plaintiff has failed to allege personal involvement during the incident that occurred on Nov. 8, 1999, while at Northern CI. This is particularly so concerning defendants Seiffert, Lynch, Ames, Felton, Kuhlman, Stucenski, Thomas, Smith, Knapp,

-11-

Jr., Daire, Lajoie, Zacharewicz, Wilcox, Strozier, Schreindorfer, and Myers.

When deciding a motion to dismiss pursuant to **R. 12(b)(6)** of the **F.R.Civ.P.**, the court must consider the legal sufficiency of the complaint, not the weight of the evidence which might be offered at trial. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Also, the purpose of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which may be offered in support thereof. Ryder Energy Distribution v. Merrill Lynch Commodities Inc., 748 F.2d 744, 779 (2nd Cir. 1984).

Moreover, under the notice requirement of **R. 8, F.R.Civ.P.**, a complaint must be designed in a way to give the defendants a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2nd Cir. 1991). Both the Federal Rules of Civil Procedure and the State Law Claim do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all they require is 'a short and plain statement of the claim' that will give the defendants fair notice of what the plaintiff's claims is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957) (footnote omitted).

-12-

R. 8(a)(2) merely requires that a complaint include a "short plain statement of the claim showing that the pleader is entitled to relief." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S.Ct 1160, 1163 (1993). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitled him to relief." Allen v. Westpoint Pepperell, Inc., 945 F.2d 40, 44 (2nd Cir. 1991)(quoting Conley 355 U.S. at 45-46); see also Goldman v. Belden, 754 F.2d 1059, 1065 (2nd Cir. 1985). This standard is to be applied with even greater force when the plaintiff presents claims of civil rights violations or when the complaint is submitted pro se. Easton v. Sundram, 947 F.2d 1011, 1015 (2nd Cir. 1991), cert. denied, 112 S.Ct 1943 (1992).

Herein, the plaintiff has presented viable claims. The plaintiff's complaint is neither vague nor ambiguous. The claims are legally sufficient on their face  and plaintiff has stated facts that support his claims for relief. Hence, the plaintiff's Amended Complaint cannot properly be dismissed.

The plaintiff has alleged within his complaint that each and every defendant was personally involved in the incident which occurred on Nov. 8, 1999. In his complaint, he alleges:

-13-

50. Neither (sic) of the defendants made any effort to either restrain the other co-defendants, contrary to their duty and obligation, or to protect the plaintiff, or prevent the violations of the plaintiff's rights, despite their being in a position to do so.

53. ...All of the defendants actively participated in the above-described wrongful acts and willful misconduct by cooperation or request, and as to each act complained of lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

The defendants further state that the plaintiff has not alleged any facts showing personal involvement by Larry J. Meyers, Warden, during the course of the assault by correctional officers under his command, and that the plaintiff has alleged that Meyers violated his constitutional rights when he failed to transfer him out of Northern CI, after the plaintiff's requests for such a transfer.

However, in his Complaint, plaintiff has alleged that he notified the Warden, along with other D.O.C. Employees, that his placement at Northern CI was a danger to himself.

44. Prior to this incident on Nov. 8, 1999, plaintiff requested to be transferred out of Connecticut/Northern CI because he was having problems with some of the defendants and guards at Northern CI.

45. Plaintiff Robinson had lodged a number of complaints against some of these defendants and other prison guards at Northern CI for assaults, threats, and constant harassment against him and other prisoners, but Defendant

-14-

Meyers and other D.O.C. officials refused to move plaintiff or these guards.

47.  After plaintiff was put in Northern CI, D.O.C. staff David Serkosky started working there, and staff harassment escalated against the plaintiff, because all of the employees that worked at Northern CI were made aware that the plaintiff was convicted for assaulting Serkosky, and this created a great deal of animosity towards plaintiff.

In the above paragraphs, plaintiff is stating that he made the officials at Northern CI aware that his placement at said facility placed him in danger from assaults, threats, and harassment by the staff of Northern CI, because of his past history of filing complaints against the staff, including the defendants, as well as his alleged assault upon a co-worker of the staff.  By failing to protect plaintiff from the assaults by the defendants, Meyers, who was on notice of the threat of such an incident, was deliberately indifferent to the safety of the plaintiff, thereby violating plaintiff's Eighth Amendment right to be free of cruel and unusual punishment.

Under **42 U.S.C. §1983**, a defendant's personal involvement in a deprivation of constitutional rights is a prerequisite to an award of damages.  Black v. Coughlin, 76 F.3d 72, 74 (2nd Cir. 1996).  A defendant in a **§1983** action may not be held liable merely because he held a high position of authority.  See, e.g. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994).  Still, a

-15-

defendant who occupies a supervisory position may be found
personally involved in the deprivation of a plaintiff's
constitutionally protected liberty interests in several ways:

> The defendant may have participated directly in the
> infraction... A supervisory official, after learning of
> the violation through a report or appeal, may have failed
> to remedy the wrong... A supervisory official may be liable
> because he/she created a policy or custom under which
> unconstitutional practices occurred, or allowed such a
> policy or custom to continue... Lastly, a supervisory
> official may be personally liable if he/she was grossly
> negligent in managing subordinates who caused the unlawful
> condition or event...

Williams v. Smith, 781 F.2d 319, 323-24 (2nd Cir. 1986)(citations
omitted).   In addition, supervisory liability may be imposed
where an official demonstrates "gross negligence" or "deliberate
indifference" to the constitutionally protected rights of inmates
by failing to act on information indicating that the
unconstitutional practices are taking place.   McCann v. Coughlin,
698 F.2d 112, 125 (2nd Cir. 1983).

Defendant Meyers knew of a "substantial risk of serious
harm and disregarded that risk by failing to take reasonable
measures to abate it."  Thus, plaintiff has alleged facts within
his Complaint which set forth personal involvement by each and
every defendant, and as such, his complaint should not be

-16-

dismissed as to defendants Seiffert, Lynch, Ames, Felton, Kuhlman, Stucenski, Thomas, Smith, Knapp, Jr., Daire, Lajoie, Zacharawicz, Wilcox, Pepe, Stozier, Bernard, Schreindorfer, and Meyers.

## POINT III

DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Section 1983 provides a federal cause of action against any person who, acting under the color of state law, deprives another of federal rights. 42 U.S.C. §1983. In order to prevail in a §1983 action for civil damages from a governmental official performing discretionary functions, the defense of qualified immunity that courts have recognized requires that the official be shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Thus, the court must first determine whether the plaintiff has alleged a deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of violation. See Seigert v. Gilley, 500 U.S. 226, 232-233, 111 S.Ct. 1789 (1991).

In this case, none of the defendants are entitled to

-17-

Qualified Immunity because they all knew that the force they were using against plaintiff was not only unreasonable but, more importantly, unprovoked and un-necessary. All of the defendants, individually and jointly, failed to provide a safe and secure environment at Northern CI. Further, defendants Meyers and Kearney denied plaintiff his right to due process when they refused him medical treatment at Northern CI. Finally, defendants Michael L. Holland, Jerry L. Wawrzyk, Randy R. Sabettini, John R. Deary, John Norwood, John Falk, Steve Faucher, Steve A. Rhodes, Kevin M. Manley, William D. Faneuff, Eric Seiffert, Neal H. Kearney, B. Correia, Daniel K. Lynch, Wilbur L. Strozier, Robert D. Ames, Richard L. Felton, T. Mitchell, P.A. Kuhlman, Jr., M. Stucenski, Thomas D. Smith, J. Knapp, Jr., L. Daire, B. Chapman, Germond, Raymond Bernard, Cheryl Schreindorfer, John Zierdt, Jr., Scott Reid, Anthony Napier, B.D. Bendelow, J. Tavariez, Plute, D. Ryan, II, Michael Jajoie, Michael W. Zacharewicz, Patrick Wilcox, Pepe, Larry J. Meyers, and John Doe, one through six, are not entitled to Qualified Immunity because they deliberately and intentionally violated plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution by laying in wait for him and savagely assaulting him simply because he was an

-18-

outspoken individual for the rights of prisoners. So, the force utilized was without provocation and violated plaintiff's eighth amendment right to be free from cruel and unusual punishment.

### POINT IV

NONE OF THE DEFENDANTS ARE ENTITLED TO
STATUTORY IMMUNITY UNDER CONNECTICUT
GENERAL STATUTES 4-165

Pursuant to Conn. Gen. Stat. §4-165, "no state officer or employee shall be personally liable for damages or injury, not wanton or willful, caused in the performance of their duties and within the scope of their employment." However, under no circumstances is this particular statute applicable concerning the instant matter.

Specifically, this incident is not something that occurred at the spur of the moment wherein there was a sudden outburst of confusion and plaintiff simply got caught up and injured by some mistake. No! This entire incident was carefully planned and carried out by all of the defendants and it was done so under the watchful eye of the supervisor in charge of the immediate area, defendant Kearney, where the savage assault took place. Clearly, the defendants had already had enough of plaintiff's complaining about their conduct of assaulting and threatening him and other inmates and when it became common

-19-

knowledge that plaintiff was incarcerated at Northern CI for
assaulting DOC staff member, David Serkosky, it was more than
enough incentive for them to plan their assault upon plaintiff.

In view of the fact that this entire matter was not any
type of spur of the moment confusion wherein plaintiff
un-intentionally got hurt, quite the contrary, it was a planned
attack by all the defendants wherein they intentionally laid
in wait for plaintiff. Therefore, plaintiff's state law claims
against all the defendants must be allowed to proceed. See
United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

### POINT V

PLAINTIFF WAS HELD IN ADMINISTRATIVE
SEGREGATION IN VIOLATION OF HIS RIGHT
TO DUE PROCESS

Clearly, counsel for the defendants have no doubt missed
the entire mark concerning this issue. Specifically, plaintiff
acknowledge that he is barred from even attempting to invalidate
his criminal conviction via civil proceedings, but this is simply
not the issue raised by plaintiff. The false imprisonment that
plaintiff alludes to is his placement/confinement to punitive
administrative segregation without being charged with violating
any prohibited act nor provided a hearing of any kind.

-20-

Plaintiff was unable to receive any assistance in the filing of this present matter until he arrived here at the New Jersey State Prison.

Before an inmate can be placed in punitive segregation he must be provided various safeguards to ensure that his placement there is not arbitrary, unjust, or simply a means to shut the inmate down from becoming a perceived problem... although the inmate have not broken any rules.   This type of conduct was abandoned years ago.   <u>Wolf v. McDonnell</u>, 94 S.Ct, 2963 (1974).  Just some of the safeguards plaintiff is entitled to before being placed in punitive segregation is notification, a hearing, the right to call/confront witnesses, and a impartial hearing officer/tribunal.   Plaintiff was placed in punitive segregation without being provided minimum due process rights and even though he could have used a term better than "false imprisonment," it does not take away from the fact that the defendants in this matter violated plaintiff's right to due process.


### POINT VI

PLAINTIFF HAVE MADE EVERY GOOD
FAITH EFFORT TO EXECUTE SERVICE
UPON THE DEFENDANTS AND SHOULD
THEREFORE BE ALLOWED TO PROCEED.

-21-

Plaintiff filled out all the U.S. Marshall Forms with the correct information as for each defendant for service and returned them back to the Clerk's Office as instructed by the Clerk. Some of the defendants have been served, however, a number of them was not served as a result of the Summons being returned as un-executed by the Marshall's Office. The defendants that have not been served are presently in the process of being served, again. Quite frankly, defendants have made it very difficult for plaintiff every step of the way and have not been cooperative in the least bit regarding getting this matter docketed. Plaintiff have spent countless stamps and funds in his effort to secure as much information as possible concerning the defendants so he may be able to properly serve them all but again, there have been less than cooperation from all the defendants.

Within the next couple of weeks plaintiff intends to have all the defendants served in this matter and he implores the court indulgence and understanding regarding service while considering defendants motion for dismissal. Further, in the event plaintiff is not able to execute service upon all the defendants because of their lack of cooperation plaintiff intends to motion the court permitting alternative service. Thus, the defendants motion for dismissal must therefore be denied.

In parting, plaintiff would like to mention that "absent service of process this lawsuit must be dismissed against the

-22-

un-named/un-served -John Doe- defendants for lack of personal jurisdiction." However, plaintiff have made every effort in his attempt to serve all of the within defendants. All efforts on his part has failed, but the plaintiff do have receipts to show that diligent effort was made on his part to serve all of the defendants herein.

Also, mere fact that defendants refused to accept processing do not measure to the point of dismissal of this action against them. All parties involved in this action have knowledge of those individuals who were in fact present during the incident. Upon the granting of plaintiff's Motion for Discovery, he will be able to make a photographic identification of those involved.

**Subsection (J) of Rule 4 provides as follows:** If a service of the summons and complaint is not made upon a defendant within 120 days after filing of the complaint and the party on whose behalf such service was required cannot show good cause as to why such service was not made within that period, the action should be dismissed as to that defendant without prejudice upon the Court's own initiative with notice to such party or upon Motion...

Plaintiff has made every effort to serve all the defendants

-23-

involves this matter before the court. Plaintiff utilized the service of the **U.S. Marshall,** and all such services which were rejected or refused. Receipts were provided to the plaintiff to support the fact that diligent effort was made on his part to serve all the parties involved.

## C O N C L U S I O N

For all of the foregoing reasons, plaintiff submit that defendants motion, pursuant to Fed. Civ. R. 12, should be denied and plaintiff's case permitted to proceed to trial.


Dated: 27 JULY        2005


                                    *Mr. Shawn L. Robinson*
                                    Shawn Robinson


-24-