FILED
2005 AUG 16 P 4: 23
U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN ROBINSON
Plaintiff

V.

MICHAEL L. HOLLAND, ET AL.,
Defendants

CIVIL NO. 3:02CV1943(CFD)(TPS)

AUGUST 12, 2005

**MEMORANDUM IN OPPOSITION TO DEFENDANT JOSE TAVAREZ MOTION TO DISMISS**

The plaintiff, Shawn Robinson, submits the following memorandum of law in opposition to Defendant's Jose Tavarez motion to dismiss.

## I. FACTS

On or about November 8, 1999, the plaintiff Shawn L. Robinson was a Connecticut state prisoner at Northern Correctional Institution, in Somers, Connecticut, who was placed in full transportation restraints by employees of Transcor America, Inc., including Defendants B. D. Bendelow, Anthony Napier, And Plute for an administrative out-of-state tranfer to Wallens Ridge State Prison in Big Stone Gap, Virginia.

At or about the date and time above, before plaintiff Robinson was transferred out-of-state to Virginia, Defendants Michael L. Holland, Jerry L. Wawrzyk, John E. Deary, Randy R. Sabettini, John Norwood and a number of other prison guards brutally beat and tortured plaintiff Robinson without provocation, while plaintiff Robinson was in full restraints, defenseless. Defendant Holland initiated this brutal attack on plaintiff Robinson, when he, for

no justifiable reason, sprayed mace into the plaintiff's eyes and stated, "This is for my white brother, David Serkosky-Nigger," while plaintiff was urinating into a commode in holding cell four and still in full transportation restraints.

Just after the plaintiff was sprayed, Defendant Wawrzyk slammed plaintiff to the floor. At which time, Defendant Sabettini kicked the plaintiff's eyeglasses off plaintiff's face. When the plaintiff called out to Defendant Neal H. Kearney for help, due to his high ranking supervisory status as a major, Defendant Kearney only started to laugh at the plaintiff, along with all the other supervisors and prison guards who were present in the Admitting and Processing Area. When Defendant Kearney failed to intervene and stop this brutal attack by his subordinates, and just laughed about it, more prison guards came into holding cell four and joined defendants Holland, Wawrzyk, Sabettini and Deary in brutally beating plaintiff Robinson.

The defendants beat plaintiff into another room and slammed plaintiff up against the wall of this room. After which, the defendants began to torture plaintiff by pinning his body up against the wall and methodically inflicting injuries on his person.

Defendants Steve Faucher, Steve A. Rhodes, B. Correia, John Falk, T. Mitchell, B. Chapman, Germond and others held plaintiff while Defendant Deary and others dug their fingers and sharp objects into plaintiff's eyes, while other defendants struck plaintiff. At the same time, Defendants Holland, Kevin M. Manley, William D. Faneuff, and others threatened to continue to mace and beat plaintiff if he did not open his eyes. When the plaintiff was able

to open his eyes, Defendant John Norwood threw some kind of hot, burning liquid into his eyes.

After Defendant Wilbur Strozier finished taking photographs of plaintiff, the defendants knocked plaintiff back to the ground and continued to beat him.

The defendants hog-tied plaintiff after knocking him down to the floor, and started pulling chunks of his hair out of his head.

The plaintiff was beaten all the way to and on the bus by defendants Faneuff, Faucher, Correia and others.

At no time did any of the defendants or medical staff at Northern CI give or offer plaintiff any medical treatment or to flush the mace from plaintiff's eyes, before or after they placed plaintiff on the bus.

After the plaintiff was brutally beaten and tortured by those defendants who worked at Northern CI, he immediately informed the Transcor America employees on the bus that he wished to be taken to the hospital for medical treatment, as well as talk to the State Police or United States Marshals and have pictures taken of his bruises and injuries.

When the Transcor America employees stopped at Walker Reception Center to pick up additional Connecticut state prisoners to be transferred out-of-state to Virginia along with plaintiff, they informed some of the escorting defendants from Northern CI that plaintiff Robinson and Inmate Robert Joslyn, #212428 were asking the Transcor America employees to take them to the hospital and call the police against the Northern CI employees because they both wanted to press criminal charges against them and the other defendants at Northern CI

who assaulted them. Instead of taking plaintiff to the hospital, the defendants forced the plaintiff to walk off the bus on his injured legs and ankles without any aid, into a holding cell in Walker Reception Center, where there was a number of Connecticut Department of Correction employees waiting.

After plaintiff was interrogated by these prison employees and told them who assaulted him, defendants Raymond Bernard and Cheryl Schreindorfer conducted a perfunctory visual cursory examination of plaintiff's injuries while he was still in full transportation restraints. Once the visual examination was completed, Defendant Schreindorfer asked the prison guards present to allow plaintiff to shower in order to decontaminate the mace he had been sprayed with but these guards said no.

Before plaintiff was loaded back on the bus and tranferred out-of-state to Virginia, plaintiff asked the warden (Donahue) to notify the state police, because he wanted to press criminal charges against the guards at NCI-Somers for assaulting him, but he told plaintiff that he would have to contact the state police on his own.

Plaintiff had to endure an eighteen (18) hour bus ride in full transportation restraints with multiple severe injuries.

The next day on November 9, 1999, plaintiff arrived at Wallens Ridge State Prison in Big Stone Gap, Virginia. Once plaintiff was taken off the bus and processed, he was taken directly to the facility's infirmary and hospitalize for several hours after informing Virginia state prison officials of what happened. During the time plaintiff was hospitalized in the prison's infirmary, he was approached by a man in civilian clothes who identified himself as

Captain Maynard from Connecticut. Plaintiff thought this person was a Connecticut State Police Officer and told him what happened in Connecticut at NCI-Somers.

Captain Maynard took pictures of some of the plaintiff's bruises and injuries, while plaintiff was in restraints.

The following day, on November 10, 1999, several Virginia State prison officials came to plaintiff and took pictures of some of plaintiff's bruises and injuries while he was in restraints. The prison doctor at Wallens Ridge State Prison had ordered that plaintiff be examined by a back specialist and have a CAT scan done for his head injuries, but plaintiff never received this treatment after the doctor was transferred to another prison.

Prior to this incident on November 8, 1999, plaintiff requested to be transferred out of Connecticut or Northern CI because he was having some serious problems with some of the defendants and guards at Northern CI. Plaintiff Robinson had lodged a number of complaints against some of these defendants and other prison guards at Northern CI for assaults, threats and constant harassment against him, but Defendant Myers and other DOC officials refused to move plaintiff or these guards.

The defendants at Northern CI planned this attack against plantiff because they saved plaintiff for last and told him that they were going to get him before he left.

After plaintiff was put in Northern CI, DOC staff David Serkosky started working there, and staff harassment escalated against the plaintiff, because all of the employees that worked at Northern CI were made aware that the

plaintiff was convicted for assaulting Serkosky, and this created a great deal of animosity towards plaintiff.

None of the defendants made any effort to either restrain the other co-defendants, contrary to their duty and obligation, or to protect the plaintiff, or prevent the violations of the plaintiff's rights, despite their being in a position to do so.

As a consequence of the actions of the defendants, and the omissions of the defendants, the plaintiff suffered injuries to his eyes, face, head, neck, mouth, back, stomach, groin, arms, legs, wrists, ankles, ears, and knees, as well as physical pain and disability and fear for his life, creating mental and emotional anguish and distress.

All of the defendants actively participated in the above-described wrongful acts and willful misconduct by cooperation or request, and as to each act complained of lent aid or encouragement to the wrongdoer.

## II. ARGUMENT

### A. STANDARD FOR MOTION TO DISMISS

A motion to dismiss functions "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which may be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1986). "In ruling on a motion to dismiss, a court must construe in plaintiff's favor any well pleaded allegations in the

complaint." Allen vs. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2nd Cir. 1991). "Dismissal is proper only where it is appears beyond doubt the plaintiff can show no set of facts in support of his claim which would entitle him to relief." Id. "A court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant: the standard is applied with particular strictness when the plaintiff complains of a civil rights violation." Branham vs. Clark, 927 F.2d 698, 705(2nd Cir. 1991).

## B. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT JOSE TAVAREZ.

In his Motion to Dismiss, Defendant Jose Tavarez argues that the court has no personal jurisdiction over him because he is neither a resident of the State of Connecticut, nor does he have the minimum contacts within the State to provoke Connecticut's long-arm statute, C.G.S. § 52-59b.

Pursuant to C.G.S. § 52-59b(a)(1), the Court has jurisdiction over any individual who "[t]ransacts business within the state."

Within his complaint, the plaintiff alleged that defendants, John Zierdt, Jr., Scott Reed, Anthony Napier, B. D. Bendelow, J. Tavarez, D. Ryan, II, and Plute were employees of Transcor America, Inc., and that said defendants were hired by the Connecticut Department of Correction to transfer Connecticut state prisoners to Virginia. (Plaintiff's Complaint, ¶5). Moreover, the plaintiff stated in his complaint that he was placed in full transportation restraints by employees of Transcor America, Inc., including Defendant B. D. Bendelow, Anthony Napier, and Plute for an administrative

outof-state transfer to Wallens Ridge State Prison in Big Stone Gap, Virginia, prior to the incidents of physical abuse by the defendants. (Plaintiff's Complaint, ¶10).

Furthermore, Defendant Jose Tavarez was working transportation for TransCor America, Inc. at the time of the incident.

Thus, Defendant Jose Tavarez falls within C.G.S. § 52-59b, in that he was conducting business within the State of Connecticut on November 8, 1999, and therefore, this Court has personal jurisdiction over Defendant Jose Tavarez.

## C. THE PLAINTIFF TOOK ALL STEPS NECESSARY TO PROPERLY SERVE DEFENDANT JOSE TAVAREZ.

The defendant argues that service was not properly executed against him. However, defendant's counsel filed a general appearance to represent the defendant in this action. Therefore, defendant has waived improper service as a defense.

The filing of a general appearance by an attorney duly authorized constituted waiver of any defect in service and gave the court jurisdiction of the person of the defendant. Landy v. Cohen, 12 Conn. Supp. 201 (1943). See Hammond v. Parker, 129 A.2d 793, 20 Conn. Supp 193 (1957). In this case, a general appearance was filed for Defendant J. Tavarez (Court Doc. #64). This action constitutes both procedural and actual waiver of any defect claimed in the service. Id.

Federal Rules of Civil Procedure Rule 4(e) (1) states that service upon an individual is to be made pursuant to the law of the state in which the district court is located. In this case, the law of Connecticut service applies. Since a general appearance constitutes waiver in Connecticut, See Landy and Hammond, supra, the defendant through his duly authorized attorney, waived any defect by the filing of his appearance on behalf of Defendant Jose Tavarez.

Futhermore, on October 31, 2002, the plaintiff filed a motion to Proceed In Forma Pauperis. (Court Doc. #1). On or about October 20, 2004, the Court ordered the plaintiff to complete a USM-285 form for all defendants, and to return same, along with a completed notice of lawsuit and waiver of service form, as well as a copy of his Amended Complaint, for each defendant, within twenty (20) days of the date of the order, (Fitzsimmons, J.) (Court Doc. #25).

The plaintiff then asked for an additional twenty (20) days within which to comply with the Court's October 20, 2004 order (Court Doc. #26), which was granted on December 8, 2004. (Court Doc. #28).

When returning the USM-285 forms to the Court, with the notice and waiver forms, the plaintiff included a set of forms for Defendant J. Tavarez, and said forms were forwarded to the U.S. Marshal for service by the Court on or about January 26, 2005. (See Marshal's Return, Marked as Exhibit A).

At this time, the plaintiff has complied with all Court Orders relative to service of process for all defendants, pursuant to his original Motion to Proceed In Forma Pauperis. Federal Rules of Civil Procedure Rule 4(m) allows the Court to direct that any

insufficient service be effected within a specified time. Therefore, should the Court determine that Defendant J. Tavarez has not been properly served, the plaintiff respectfully requests that the Court order additional service through the U.S. Marshal, pursuant to plaintiff's Motion to Proceed In Forma Pauperis.

## III. CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests that the Court not dismiss his Third Amended Complaint against Defendant J. Tavarez.

RESPECTFULLY SUBMITTED,

By /s/ Shawn L. Robinson

Shawn Robinsin, PRO SE
#430720
P.O. Box 861
Trenton, NJ 08625-0861

**CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following counsel on this 12th, day of August, 2005:

MS. ANN E. LYNCH ESQ.
ASSISTANT ATTORNEY GENERAL
110 SHERMAN STREET
HARTFORD, CT 06105

MR. JOHN W. DIETZ ESQ.
HALLORAN AND SAGE, LLP
315 POST ROAD WEST
WESTPORT, CT 06880

Mr. Shawn L. Robinson
Shawn Robinson, PRO SE

U.S. Department of Justice
United States Marshals Service

Exhibit A **PROCESS RECEIPT AND RETURN**

*See Instructions for "Service of Process by the U.S. Marshal" on the reverse of this form.*

| | |
|---|---|
| PLAINTIFF: SHAWN L. ROBINSON | COURT CASE NUMBER: 3:02CV1943 (CFD) (TPS) |
| DEFENDANT: MICHAEL L. HOLLAND | TYPE OF PROCESS: COMPLAINT |

**SERVE** NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN: J. TAVARIEZ

**AT** ADDRESS (*Street or RFD, Apartment No., City, State and ZIP Code*): 646 MELROSE AVE, NASHVILLE TN 37211

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

SHAWN L. ROBINSON
#430720 - 0S01503529
PO BOX 861
TRENTON NJ 08625-0861

| | |
|---|---|
| Number of process to be served with this Form - 285 | ONE |
| Number of parties to be served in this case | 39 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service*):

Fold

INDIVIDUAL CAPACITY/IFP

[illegible handwritten notes]

Fold

Signature of Attorney or other Originator requesting service on behalf of: Shawn L. Robinson

☑ PLAINTIFF ☐ DEFENDANT

TELEPHONE NUMBER: NONE

DATE: 08-NOV-2004

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (*Sign only first USM 285 if more than one USM 285 is submitted*) | Total Process | District of Origin | District to Serve | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | 1 | No. [illegible] | No. [illegible] | [illegible signature] | [illegible] |

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☑ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (*See remarks below*)

Name and title of individual served (*if not shown above*)

☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.

Address (*complete only if different than shown above*)

Date of Service | Time am pm

Signature of U.S. Marshal or Deputy: [illegible signature]

| Service Fee | Total Mileage Charges (*including endeavors*) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|
| | | | | | | |

REMARKS:

Rtrnd 2/23/05 - Unexecuted

NOTE

**PRIOR EDITIONS MAY BE USED**

3. NOTICE OF SERVICE

**FORM USM-285 (Rev. 12/15/80)**