AUG - 9 2005

# FILED

2005 AUG 29 P 2: 08

U.S. DISTRICT COURT
BRIDGEPORT, CONN

Shawn Robinson
#430720-0831503529
New Jersey Sate Prison
P.O. Box - 861
Trenton  NJ  08625

**Plaintiff - Pro Se**

| | |
|---|---|
| SHAWN ROBINSON, | : |
| Plaintiff, | : |
| v. | : |
| MICHAEL HOLLAND, et. al., | : |
| Defendants. | : |

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CIVIL ACTION NO.

3:02-cv-1943(CFD)  TPS

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR DISMISSAL

---

## TABLE OF CONTENTS                          Page

PRELIMINARY STATEMENT................................... 1

STATEMENT OF FACT AND PROCEDURAL HISTORY................ 3

**LEGAL ARGUMENT (s)**

**POINT I**

NONE OF THE DEFENDANTS ARE ENTITLED TO DISMISSAL
AND PLAINTIFF'S CIVIL ACTION IS NOT BARRED BECAUSE
HE HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES.
...................................................... 10

**POINT II**

PLAINTIFF HAS ALLEGED PERSONAL
INVOLVEMENT AS TO ALL DEFENDANTS.
...................................................... 11

**POINT III**

THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.
...................................................... 17

**POINT IV**

NONE OF THE DEFENDANTS ARE ENTITLED TO STATUTORY
IMMUNITY UNDER CONNECTICUT GENERAL STATUTES 4-165.
...................................................... 19

**POINT V**

PLAINTIFF WAS HELD IN ADMINISTRATIVE SEGREGATION
IN VIOLATION OF HIS RIGHT TO DUE PROCESS.
...................................................... 20

**POINT VI**

PLAINTIFF HAVE MADE EVERY GOOD FAITH EFFORT TO
EXECUTE SERVICE UPON THE DEFENDANTS AND
SHOULD THEREFORE BE ALLOWED TO PROCEED.
...................................................... 21

CONCLUSION ...................................................... 24

## TABLE OF CASES

                                                                    Page

Allen v. Westpoint Pepperell, Inc., 945 F.2d 40....... 13

Black v. Coughlin, 76 F.3d 72........................... 16

Concepcion v. Morton, 306 F.3rd 1347.................... 2

Conley v. Gibson, 355 U.S. 41......................... 12-13

Easton v. Sundram, 947 F.2d 1011....................... 13

Coldman v. Belden, 754 F.2d 1059....................... 13

Harlow v. Fitzgerald, 457 U.S. 800 .................... 17

Leatherman v. Tarrant County Narcotics Intelligence and
Coordination Unit, 113 S.Ct 1160..................... 13

LeClma v. Coughlin, 485 F.2d 112....................... 16

Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119....... 13

Ryder Energy Distribution v. Merrill Lynch Commodities,
Inc., 748 F.2d 744.................................... 13

Seigert v. Gilley, 500 U.S. 226 ..................... 17

Williams v. Smith, 781 F.2d 319......................... 16

Holt v. McDonnell, 84 S.Ct 3363 .................... 21

Wright v. Smith, 21 F.3d 496.......................... 16

United Mine Workers v. Gibbs, 383 U.S. 715.............. 20

## RULES CITED

F.R.Civ.P. 12 (b)(6)................................. 12
F.R.Civ.P. 8........................................ 12
F.R.Civ.P. 8(a)(2).................................. 13

## STATUTES CITED

Conn. Gen. Stat. 54-155............................. 19
42 U.S.C. §1983................................. 16, 16, 17

## PRELIMINARY STATEMENT

Defendants motion for dismissal or for Summary Judgment should be denied because: **(1)** plaintiff have exhausted his administrative remedies pursuant to the Prisoners Litigation Reform Act **(P.L.R.A.)**; **(2)** the defendants are not entitled to Qualified Immunity because their conduct violated plaintiff's constitutional rights; and **(3)** counsel for the defendants have intentionally delayed filing a formal answer to the complaint for no other reason but to circumvent plaintiff's right to seek redress via the court system. Furthermore, defendants have made every effort to deny plaintiff his right to seek redress by transferring him to various prisons and separating plaintiff from his personal property for extended periods of time.

Plaintiff, Shawn Robinson, #0S01503529-430720, is an inmate presently confined at New Jersey State Prison, located at P.O. Box 861, Trenton New Jersey, 08625. Plaintiff contends and intends to prove that defendants, Michael L. Holland, Jerry L. Wawrzyk, Randy R. Sabettini, John R. Deary, John Norwood, John Falk, Steve Faucher, Steve A. Rhodes, Kevin M. Manley, William D. Faneuff, Eric Seiffert, Neal H. Kearney, B. Correia, Daniel K. Lynch, Wilbur L. Strozier, Robert D. Ames, Richard L. Felton, T. Mitchell, P.A. Kuhlman, Jr., M. Stucenski, Thomas D. Smith, J. Knapp, Jr., L. Daire, B. Chapman, Germond, Raymond

-1-

Bernard, Cheryl Schreindorfer, John Zierdt, Jr., Scott Reid, Anthony Napier, B.D. Bendelow, J. Favariez, Flute, D. Ryan, II, Michael Jajoie, Michael A. Zacharewicz, Patrick Wilcox, Pepe, Larry J. Meyers, and John Doe, one through six, violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution by using excessive force, subjecting him to cruel and unusual punishment, being deliberately indifferent to plaintiff's serious medical needs, and denying him due process.

Defendants motion to dismiss must be denied because the record is clear that plaintiff have exhausted his administrative remedies. Plaintiff concedes that pursuant to the **P.L.R.A.** (Prisoners Litigation Reform Act) and Concepcion v. Morton, 306 F.3rd 1347 (3rd Cir. 2002), as an inmate, he's required to exhaust his administrative remedies before bringing suit. Plaintiff attempted to bring attention to what happened to him while at the Northern Correctional Institution (Northern CI) in Somers, Connecticut, every chance he got. Soon as he was placed on the bus to be transferred he informed the Transcor America workers that he wished to be taken to the hospital for medical treatment and he wanted to speak with the State Police or United States Marshals and have photos taken of his injuries.

-2-

Plaintiff was paid no attention and transported to Walker Reception Center (Walker RC) to pick up other Connecticut inmates scheduled for transfer out of State to somewhere in Virginia. While at Walker RC the Transcor workers informed the escorting officers who worked at Northern CI that plaintiff and an inmate Robert Joslyn #212428 are asking to be taken to the hospital and to call police because they wanted to press criminal charges against all the defendants who assaulted them both.

Plaintiff was taken off the bus in full restraints and escorted to a holding cell inside Walker RC where there were a number of Connecticut DOC employees waiting. After plaintiff was interrogated by D.O.C. employees and told them who had assaulted him, defendants Bernard and Scareindorfer conducted a visual examination of his injuries. After the examination, defendant Schreindorfer asked the officers of Walker RC to allow plaintiff to shower in order to remove the mace plaintiff had been sprayed with and the officers said "no". Before plaintiff was loaded back on the bus for transportation he asked the Warden of Walker RC, Donahue, to call the state police because he wanted to press criminal charges against the employees at Northern CI for assaulting him, however, Donahue informed plaintiff he would have to contact the police on his own. After 13 hours

-3-

on the bus and in pain, plaintiff arrived at Wallens Ridge State
Prison (Wallens Ridge) in Virginia, on November 9, 1999.  Once
off the bus and processed, plaintiff was taken directly to the
infirmary and hospitalized for several hours after informing
Wallens Ridge Officials of what happened.  While hospitalized,
plaintiff was accosted and interrogated by someone in civilian
clothes who identified himself as Capt. Maynard from Connecticut.
After plaintiff explained what had happened to him Capt. Maynard
took photographs of some of plaintiff's injuries.  On November
10, 1999, several officials from Wallens Ridge came to plaintiff
and took photographs of some of his injuries too.  The doctor
at Wallens Ridge ordered various treatments for plaintiff, but
none was ever provided and when plaintiff requested to see the
same doctor again he was told the doctor was transferred to
another facility.

Once plaintiff was briefly reunited with his personal
property he immediately took to the task of writing complaints
and letters to Connecticut Law Enforcement Agencies, State and
Federal Officials, including the director of Transcor America,
Inc., Commissioner of Corrections, and the Commission on Human
Rights and Opportunities, regarding the brutal assault on
November 8, 1999.  Plaintiff received a response from the

-4-

Connecticut Department of Corrections regarding his complaint of being assaulted and denied medical treatment on November 8, 1999, while at Northern CI informing him that his allegations were being investigated by State Police and his complaint would be answered afterwards. The exhaustion requirement serves to provide prison officials notice of the contentions complained of in hopes that they will take appropriate corrective action. Here, it's clear that plaintiff have taken the necessary measures of satisfying the requirements of the **P.L.R.A.** and the defendants have done nothing to even address plaintiff's concerns, much less take any type of corrective action. Therefore, defendants motion must be denied.

Next, the defendants are not entitled to qualified immunity because they have violated the State and Federal Constitutions. Prior to November 8, 1999, plaintiff had requested a transfer out of Northern CI because he was having serious problems with a number of the defendants and other guards at Northern CI. These problems stemmed from plaintiff having lodged complaints against them for assaults, threats, and constant harassment against him. However, defendant Meyers and other DOC officials refused to transfer plaintiff or the guards. Also, soon after plaintiff was placed in Northern CI, DOC staff David Serkosky

-5-

started working there and the harassment against plaintiff really began to escalate because, everyone knew plaintiff was convicted of assaulting Serkosky and this created even more animosity and harassment towards plaintiff.

The defendants at Northern CI carefully planned the brutal attack on plaintiff and those who didn't actively participate in the beating stood by and allowed plaintiff to be savagely beaten. They intentionally saved plaintiff for the last person to be processed out so he would be alone and they could assault him.

Plaintiff intends to provide evidence and testimony through discovery and independent sources to establish that defendants were well aware of his concerns for his safety and welfare and they took no precautions to prevent the attack upon him. Moreover, defendants Meyers and Kearney did absolutely nothing to ensure that excessive force was not used in Northern CI and, in fact, by turning their back on what had taken place actually supported it.

Additionally, the evidence intended to be presented in this case will not only prove the defendants plotted and planned the attack on plaintiff, but they laid in wait to carry out their assault at a time when plaintiff was most vulnerable,

-6-

in full restraints. Plaintiff acknowledge that an officer may use "reasonable force" when confronted with a threat to the safety of the institution or staff, however, it is readily apparent that at no time did plaintiff pose a threat to anyone. As a matter of fact, plaintiff was elated to be leaving Northern CI because it represented an end to the constant threats and harassment he had been experiencing.

As a direct consequence of the attack upon plaintiff, he sustained injuries to his eyes, face, head, neck, mouth, back, stomach, groin, arms, legs, wrists, ankles, ears, and knees. There was so much disdain for plaintiff that the defendants even resorted to tearing his dreadlocks out of his head. Prior to the attack upon plaintiff he was a healthy, energetic, and athletic type of individual. Though most of his injuries have healed over the years, plaintiff continue to suffer from the psychological trauma of this entire ordeal. Simply stated, the force used upon plaintiff was totally unreasonable and yes, absolutely un-necessary. The record in this case is clear and full of legitimate concerns that can only be resolved through litigation.

Thus, the defendants are not entitled to dismissal of this action because plaintiff is more than able to adduce evidence

-7-

where a jury could determine that plaintiff was assaulted and the defendants named herein are responsible. Furthermore, a material question of fact does exist in this case and plaintiff should be permitted to proceed. Finally, it is submitted that all previous delays in the filing of this suit can be attributed to the defendants orchestrating numerous transfers of plaintiff to different administrative segregation units, plaintiff being separated from his personal property for extended periods of time, and plaintiff's inability to commence this action without assistance. As soon as plaintiff was united with his personal property and released to general population he commenced suit.

## COUNTER STATEMENT OF FACTS AND PROCEDURAL HISTORY

Prior to November 3, 1999, plaintiff was incarcerated at Northern CI where he was being harassed and threatened on a daily basis. Plaintiff wrote to various officials concerning what he was experiencing but, no one responded to his concerns. Soon after plaintiff arrived at Northern CI, DOC staff David Serkosky started working there and it became common knowledge amongst the officers that plaintiff was convicted of assaulting Serkosky. As a result of this knowledge the threats and harassment plaintiff was experiencing only intensified.

-8-

Plaintiff again wrote various state and federal officials in regards to what was happening to him and requested to be transferred to avoid the nonsense that was going on. Again, plaintiff's request was not formally responded to. On November 8, 1999, plaintiff was placed in full transportation restraints by employees of Transcor America, Inc. for what he thought was a response to his request to be transferred.

Plaintiff was transferred but, not before he was savagely and brutally beaten by guards at northern CI, the defendants herein. This beating took place under the watchful eye of Defendant Kearney whom were the supervisor in charge and who did nothing but laugh while the incident was taking place.

Immediately after the beating of plaintiff, he was placed on a bus and transferred to Walker CI without being allowed to see a doctor even though he requested and needed to. He was not allowed to see a doctor until he arrived at Wallens Ridge on November 9, 1999, some 18 hours after the initial assault. Plaintiff's injuries are documented and he have made every effort to address and resolve the unprovoked assault upon him administratively, all of his efforts have been to no avail.

At the behest of the Connecticut Department of Corrections and Officials, plaintiff was placed in administrative segregation

-9-

at every prison he was transferred to and this was done without
plaintiff ever being charged or provided due process. Soon as
plaintiff was released from administrative segregation and united
with some of his personal property, he sought the assistance
of a paralegal to assist him in filing this suit.  The defendants
herein have made every effort to prevent plaintiff from
addressing what they did to him and even now they still haven't
formally responded to plaintiff's complaint even though they
know his claims are legitimate.

## POINT 1

THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL
OF THIS ACTION AND THE PLAINTIFF'S ACTION IS
NOT BARRED BECAUSE HE HAS EXHAUSTED HIS
ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act of 1996, (**PLRA**) requires
prisoners asserting a claim pursuant to 42 <u>U.S.C.</u> §1983 to first
exhaust administrative remedies.  Plaintiff Robinson affirms
that he did in fact, exhaust his administrative remedies upon
every available opportunity.  Plaintiff attempted to bring
attention to what happened to him while at Northern CI by writing
letters to Connecticut Law Enforcement Agencies, State and
Federal Officials, including the director of Transcor America
Inc., Commissioner of Corrections, and the Commission on Human
Rights and Opportunities.  Plaintiff received a response from

-10-