the Connecticut Department of Corrections regarding his complaint "informing him that his allegations were being investigated by State Police and his complaint would be answered afterwards." However, as far as plaintiff is aware, that is the extent to which his concerns were formally addressed.

The exhaustion requirement serves to provide prison officials notice of the contentions complained of in hopes that they will take appropriate corrective action. Here, it's clear that plaintiff have taken the necessary measures of satisfying the requirements of the **P.L.R.A.** and the defendants have done nothing to even address plaintiff's concerns, much less take any type of corrective action. Apparently, defendants concede that plaintiff made every effort to conform with the **P.L.R.A** exhaustion requirements because they fail to even address it.

### POINT II

PLAINTIFF HAS ALLEGED PERSONAL
INVOLVEMENT AS TO ALL DEFENDANTS

In their motion to dismiss, the defendants have stated that plaintiff has failed to allege personal involvement during the incident that occurred on Nov. 8, 1999, while at Northern CI. This is particularly so concerning defendants Seiffert, Lynch, Ames, Felton, Kuhlman, Stucenski, Thomas, Smith, Knapp,

Jr., Daire, Lajoie, Zacharewicz, Wilcox, Strozier, Schreindorfer, and Myers.

When deciding a motion to dismiss pursuant to **R. 12(b)(6)** of the **F.R.Civ.P.**, the court must consider the legal sufficiency of the complaint, not the weight of the evidence which might be offered at trial. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Also, the purpose of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which may be offered in support thereof. Ryder Energy Distribution v. Merrill Lynch Commodities Inc., 748 F.2d 714, 779 (2nd Cir. 1984).

Moreover, under the notice requirement of **R. 8, F.R.Civ.P.**, a complaint must be designed in a way to give the defendants a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2nd Cir. 1991). Both the Federal Rules of Civil Procedure and the State Law Claim do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all they require is 'a short and plain statement of the claim' that will give the defendants fair notice of what the plaintiff's claims is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957) (footnote omitted).

R. 8(a)(2) merely requires that a complaint include a "short plain statement of the claim showing that the pleader is entitled to relief." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S.Ct 1160, 1163 (1993). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitled him to relief." Allen v. Westpoint Pepperell, Inc., 945 F.2d 40, 44 (2nd Cir. 1991)(quoting Conley 355 U.S. at 45-46); see also Goldman v. Belden, 754 F.2d 1059, 1065 (2nd Cir. 1985). This standard is to be applied with even greater force when the plaintiff presents claims of civil rights violations or when the complaint is submitted pro se. Easton v. Sundram, 947 F.2d 1011, 1015 (2nd Cir. 1991), cert. denied, 112 S.Ct 1943 (1992).

Herein, the plaintiff has presented viable claims. The plaintiff's complaint is neither vague nor ambiguous. The claims are legally sufficient on their face and plaintiff has stated facts that support his claims for relief. Hence, the plaintiff's Amended Complaint cannot properly be dismissed.

The plaintiff has alleged within his complaint that each and every defendant was personally involved in the incident which occurred on Nov. 3, 1999. In his complaint, he alleges:

-13-

50. Neither (sic) of the defendants made any effort to either restrain the other co-defendants, contrary to their duty and obligation, or to protect the plaintiff, or prevent the violations of the plaintiff's rights, despite their being in a position to do so.

53. ...All of the defendants actively participated in the above-described wrongful acts and willful misconduct by cooperation or request, and as to each act complained of lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

The defendants further state that the plaintiff has not alleged any facts showing personal involvement by Larry J. Meyers, Warden, during the course of the assault by correctional officers under his command, and that the plaintiff has alleged that Meyers violated his constitutional rights when he failed to transfer him out of Northern CI, after the plaintiff's requests for such a transfer.

However, in his Complaint, plaintiff has alleged that he notified the Warden, along with other D.O.C. Employees, that his placement at Northern CI was a danger to himself.

44. Prior to this incident on Nov. 8, 1999, plaintiff requested to be transferred out of Connecticut/Northern CI because he was having problems with some of the defendants and guards at Northern CI.

45. Plaintiff Robinson had lodged a number of complaints against some of these defendants and other prison guards at Northern CI for assaults, threats, and constant harassment against him and other prisoners, but Defendant

-14-

Meyers and other D.O.C. officials refused to move plaintiff or these guards.

47. After plaintiff was put in Northern CI, D.O.C. staff David Serkosky started working there, and staff harassment escalated against the plaintiff, because all of the employees that worked at Northern CI were made aware that the plaintiff was convicted for assaulting Serkosky, and this created a great deal of animosity towards plaintiff.

In the above paragraphs, plaintiff is stating that he made the officials at Northern CI aware that his placement at said facility placed him in danger from assaults, threats, and harassment by the staff of Northern CI, because of his past history of filing complaints against the staff, including the defendants, as well as his alleged assault upon a co-worker of the staff. By failing to protect plaintiff from the assaults by the defendants, Meyers, who was on notice of the threat of such an incident, was deliberately indifferent to the safety of the plaintiff, thereby violating plaintiff's Eighth Amendment right to be free of cruel and unusual punishment.

Under **42 U.S.C. §1983**, a defendant's personal involvement in a deprivation of constitutional rights is a prerequisite to an award of damages. Black v. Coughlin, 76 F.3d 72, 74 (2nd Cir. 1996). A defendant in a §1983 action may not be held liable merely because he held a high position of authority. See, e.g. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994). Still, a

-15-

defendant who occupies a supervisory position may be found personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests in several ways:

> The defendant may have participated directly in the infraction... A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong... A supervisory official may be liable because he/she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue... Lastly, a supervisory official may be personally liable if he/she was grossly negligent in managing subordinates who caused the unlawful condition or event...

<u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2nd Cir. 1986)(citations omitted). In addition, supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference" to the constitutionally protected rights of inmates by failing to act on information indicating that the unconstitutional practices are taking place. <u>McCann v. Coughlin</u>, 698 F.2d 112, 125 (2nd Cir. 1983).

Defendant Meyers knew of a "substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." Thus, plaintiff has alleged facts within his Complaint which set forth personal involvement by each and every defendant, and as such, his complaint should not be

-16-

dismissed as to defendants Seiffert, Lynch, Ames, Felton, Kuhlman, Stucenski, Thomas, Smith, Knapp, Jr., Caire, Lajoie, Zacharawicz, Wilcox, Pope, Stozier, Bernard, Schreindorfer, and Meyers.

### POINT III

DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Section 1983 provides a federal cause of action against any person who, acting under the color of state law, deprives another of federal rights. 42 U.S.C. §1983. In order to prevail in a §1983 action for civil damages from a governmental official performing discretionary functions, the defense of qualified immunity that courts have recognized requires that the official be shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Thus, the court must first determine whether the plaintiff has alleged a deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of violation. See Seigert v. Gilley, 500 U.S. 226, 232-233, 111 S.Ct. 1789 (1991).

In this case, none of the defendants are entitled to

Qualified Immunity because they all knew that the force they were using against plaintiff was not only unreasonable but, more importantly, unprovoked and un-necessary. All of the defendants, individually and jointly, failed to provide a safe and secure environment at Northern CI. Further, defendants Meyers and Kearney denied plaintiff his right to due process when they refused him medical treatment at Northern CI. Finally, defendants Michael L. Rolland, Jerry L. Hawrayk, Randy R. Sabettini, John R. Deary, John Norwood, John Falk, Steve Faucher, Steve A. Rhodes, Kevin R. Manley, William D. Faneuff, Eric Seiffert, Real E. Kearney, S. Correia, Daniel R. Lynch, Wilbur L. Strozier, Robert D. Ames, Richard L. Felton, T. Mitchell, P.A. Kuhlman, Jr., R. Stucenski, Thomas C. Smith, J. Knapp, Jr., L. Daire, B. Chapman, Germond, Raymond Bernard, Cheryl Schreindorfer, John Zierdt, Jr., Scott Reid, Anthony Napier, B.D. Bendelow, J. Tavariez, Plute, D. Ryan, II, Michael Jajoie, Michael W. Zacharewicz, Patrick Wilcox, Pepe, Larry J. Meyers, and John Doe, one through six, are not entitled to Qualified Immunity because they deliberately and intentionally violated plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution by laying in wait for him and savagely assaulting him simply because he was an

-18-

outspoken individual for the rights of prisoners. So, the force utilized was without provocation and violated plaintiff's eighth amendment right to be free from cruel and unusual punishment.

### POINT IV

NONE OF THE DEFENDANTS ARE ENTITLED TO STATUTORY IMMUNITY UNDER CONNECTICUT GENERAL STATUTES 4-165

Pursuant to Conn. Gen. Stat. 54-165, "no state officer or employee shall be personally liable for damages or injury, not wanton or willful, caused in the performance of their duties and within the scope of their employment." However, under no circumstances is this particular statute applicable concerning the instant matter.

Specifically, this incident is not something that occurred at the spur of the moment wherein there was a sudden outburst of confusion and plaintiff simply got caught up and injured by some mistake. No! This entire incident was carefully planned and carried out by all of the defendants and it was done so under the watchful eye of the supervisor in charge of the immediate area, defendant Kearney, where the savage assault took place. Clearly, the defendants had already had enough of plaintiff's complaining about their conduct of assaulting and threatening him and other inmates and when it became common

-19-

knowledge that plaintiff was incarcerated at Northern CI for assaulting DOC staff member, David Serkosky, it was more than enough incentive for them to plan their assault upon plaintiff.

In view of the fact that this entire matter was not any type of spur of the moment confusion wherein plaintiff un-intentionally got hurt, quite the contrary, it was a planned attack by all the defendants wherein they intentionally laid in wait for plaintiff. Therefore, plaintiff's state law claims against all the defendants must be allowed to proceed. See United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

### POINT V

PLAINTIFF WAS HELD IN ADMINISTRATIVE
SEGREGATION IN VIOLATION OF HIS RIGHT
TO DUE PROCESS

Clearly, counsel for the defendants have no doubt missed the entire mark concerning this issue. Specifically, plaintiff acknowledge that he is barred from even attempting to invalidate his criminal conviction via civil proceedings, but this is simply not the issue raised by plaintiff. The false imprisonment that plaintiff alludes to is his placement/confinement to punitive administrative segregation without being charged with violating any prohibited act nor provided a hearing of any kind.

-20-

Plaintiff was unable to receive any assistance in the filing of this present matter until he arrived here at the New Jersey State Prison.

Before an inmate can be placed in punitive segregation he must be provided various safeguards to ensure that his placement there is not arbitrary, unjust, or simply a means to shut the inmate down from becoming a perceived problem... although the inmate have not broken any rules. This type of conduct was abandoned years ago. <u>Wolf v. McDonnell, 94 S.Ct. 2963 (1974)</u>. Just some of the safeguards plaintiff is entitled to before being placed in punitive segregation is notification, a hearing, the right to call/confront witnesses, and a impartial hearing officer/tribunal. Plaintiff was placed in punitive segregation without being provided minimum due process rights and even though he could have used a term better than "false imprisonment," it does not take away from the fact that the defendants in this matter violated plaintiff's right to due process.

## POINT VI

PLAINTIFF HAVE MADE EVERY GOOD
FAITH EFFORT TO EXECUTE SERVICE
UPON THE DEFENDANTS AND SHOULD
THEREFORE BE ALLOWED TO PROCEED.

-21-

Plaintiff filled out all the U.S. Marshall forms with the correct information as for each defendant for service and returned them back to the Clerk's Office as instructed by the Clerk. Some of the defendants have been served, however, a number of them was not served as a result of the Summons being returned as un-executed by the Marshall's Office. The defendants that have not been served are presently in the process of being served, again. Quite frankly, defendants have made it very difficult for plaintiff every step of the way and have not been cooperative in the least bit regarding getting this matter docketed. Plaintiff have spent countless stamps and funds in his effort to secure as much information as possible concerning the defendants so he may be able to properly serve them all but again, there have been less than cooperation from all the defendants.

Within the next couple of weeks plaintiff intends to have all the defendants served in this matter and he implores the court indulgence and understanding regarding service while considering defendants motion for dismissal. Further, in the event plaintiff is not able to execute service upon all the defendants because of their lack of cooperation plaintiff intends to motion the court permitting alternative service. Thus, the defendants motion for dismissal must therefore be denied.

In parting, plaintiff would like to mention that "absent service of process this lawsuit must be dismissed against the

un-named/un-served -John Doe- defendants for lack of personal jurisdiction." However, plaintiff have made every effort in his attempt to serve all of the within defendants. All efforts on his part has failed, but the plaintiff do have receipts to show that diligent effort was made on his part to serve all of the defendants herein.

Also, mere fact that defendants refused to accept processing do not measure to the point of dismissal of this action against them. All parties involved in this action have knowledge of those individuals who were in fact present during the incident. Upon the granting of plaintiff's Motion for Discovery, he will be able to make a photographic identification of those involved.

**Subsection (J) of Rule 4 provides as follows:** If a service of the summons and complaint is not made upon a defendant within 120 days after filing of the complaint and the party on whose behalf such service was required cannot show good cause as to why such service was not made within that period, the action should be dismissed as to that defendant without prejudice upon the Court's own initiative with notice to such party or upon Motion...

Plaintiff has made every effort to serve all the defendants

-23-

involved in this matter before the Court. Plaintiff utilized the service of the **U.S. Marshall,** and all such services which were rejected or refused. Receipts were provided to the plaintiff to support the fact that diligent effort was made on his part to serve all the parties involved.

### CONCLUSION

For all of the foregoing reasons, plaintiff submit that defendants motion, pursuant to Fed. Civ. R. 12, should be denied and plaintiff's case permitted to proceed to trial.

Dated: 27 July 2005

*Mr. Shawn L. Robinson*
Shawn Robinson

## CERTIFICATION

I hereby certify that a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DENY MOTION TO DISMISS** was mailed this __27__ day of __July__ 2005, first class postage prepaid, to:

Ms. Ann E. Lynch, Esq.

Assistant Attorney General

110 Sherman Street

Hartford, CT. 06105

Mr. John W. Dietz, Esq.

Halloran and Sage, LLP

315 Post Road West

Westport, CT. 06880

Respectfully Submitted,

*Mr. Shawn L. Robbinson*

Shawn L. Robbinson, Pro Se