UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN ROBINSON<br>*Plaintiff*<br><br>V.<br><br>MICHAEL L. HOLLAND, ET AL.,<br>*Defendants* | CIVIL NO. 3:02CV1943(CFD)(TPS)<br><br><br><br>SEPTEMBER 27, 2006 |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS', ZIERD, TAVAREZ, REID, NAPIER, BENDELOW AND RYAN, RENEWED MOTION TO DISMISS

The plaintiff, Shawn Robinson, submits the following memorandum of law in opposition to Defendants', Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan, Renewed Motion to Dismiss.

I.   **FACTS**

On or about November 8, 1999, the plaintiff Shawn L. Robinson was a Connecticut state prisoner at Northern Correctional Institution, in Somers, Connecticut, who was placed in full transportation restraints by employees of Transcor America, Inc., including Defendants B. D. Bendelow, Anthony Napier, and Plute for an administrative out-of-state transfer to Wallens Ridge State Prison in Big Stone Gap, Virginia.

At or about the date and time above, before plaintiff Robinson was transferred out-of-state to Virginia, Defendants Michael L. Holland, Jerry L. Wawrzyk, John E. Deary, Randy R. Sabettini, John Norwood and a number of other prison guards brutally beat and tortured plaintiff Robinson without provocation, while plaintiff Robinson was in full restraints,

defenseless. Defendant Holland initiated this brutal attack on plaintiff Robinson, when he, for no justifiable reason, sprayed mace into the plaintiff's eyes and stated, "This is for my white brother, David Serkosky-Nigger," while plaintiff was urinating into a commode in holding cell four and still in full transportation restraints.

Just after the plaintiff was sprayed, Defendant Wawrzyk slammed plaintiff to the floor. At which time, Defendant Sabettini kicked the plaintiff's eyeglasses off plaintiff's face.

When the plaintiff called out to Defendant Neal H. Kearney for help, due to his high ranking supervisory status as a major, Defendant Kearney only started to laugh at the plaintiff, along with all the other supervisors and prison guards who were present in the Admitting and Processing Area. When Defendant Kearney failed to intervene and stop this brutal attack by his subordinates, and just laughed about it, more prison guards came into holding cell four and joined defendants Holland, Wawrzyk, Sabettini and Deary in brutally beating plaintiff Robinson.

The defendants beat plaintiff into another room and slammed plaintiff up against the wall of this room. After which, the defendants began to torture plaintiff by pinning his body up against the wall and methodically inflicting injuries on his person.

Defendants Steve Faucher, Steve A. Rhodes, B. Correia, John Falk, T. Mitchell, B. Chapman, Germond and others held plaintiff while Defendant Deary and others dug their fingers and sharp objects into plaintiff's eyes, while other defendants struck plaintiff. At the same time, Defendants Holland, Kevin M. Manley, William D. Faneuff, and others threatened to continue to mace and beat plaintiff if he did not open his eyes. When the plaintiff was able

to open his eyes, Defendant John Norwood threw some kind of hot, burning liquid into his eyes.

After Defendant Wilbur Strozier finished taking photographs of plaintiff, the defendants knocked plaintiff back to the ground and continued to beat him.

The defendants hog-tied plaintiff after knocking him down to the floor, and started pulling chunks of his hair out of his head.

The plaintiff was beaten all the way to and on the bus by defendants Faneuff, Faucher, Correia and others.

At no time did any of the defendants or medical staff at Northern CI give or offer plaintiff any medical treatment or to flush the mace from plaintiff's eyes, before or after they placed plaintiff on the bus.

After the plaintiff was brutally beaten and tortured by those defendants who worked at Northern CI, he immediately informed the Transcor America employees on the bus that he wished to be taken to the hospital for medical treatment, as well as talk to the State Police or United States Marshals and have pictures taken of his bruises and injuries.

When the Transcor America employees stopped at Walker Reception Center to pick up additional Connecticut state prisoners to be transferred out-of-state to Virginia along with plaintiff, they informed some of the escorting defendants from Northern CI that plaintiff Robinson and Inmate Robert Joslyn, #212428 were asking the Transcor America employees to take them to the hospital and call the police against the Northern CI employees because they both wanted to press criminal charges against them and the other defendants at Northern CI

3

who assaulted them. Instead of taking plaintiff to the hospital, the defendants forced the plaintiff to walk off the bus on his injured legs and ankles without any aid, into a holding cell in Walker Reception Center, where there was a number of Connecticut Department of Correction employees waiting.

After plaintiff was interrogated by these prison employees and told them who assaulted him, defendants Raymond Bernard and Cheryl Schreindorfer conducted a perfunctory visual cursory examination of plaintiff's injuries while he was still in full transportation restraints. Once the visual examination was completed, Defendant Schreindorfer asked the prison guards present to allow plaintiff to shower in order to decontaminate the mace he had been sprayed with but these guards said no.

Before plaintiff was loaded back on the bus and transferred out-of-state to Virginia, plaintiff asked the warden (Donahue) to notify the state police, because he wanted to press criminal charges against the guards at NCI-Somers for assaulting him, but he told plaintiff that he would have to contact the state police on his own.

Plaintiff had to endure an eighteen (18) hour bus ride in full transportation restraints with multiple severe injuries.

The next day on November 9, 1999, plaintiff arrived at Wallens Ridge State Prison in Big Stone Gap, Virginia. Once plaintiff was taken off the bus and processed, he was taken directly to the facility's infirmary and hospitalize for several hours after informing Virginia state prison officials of what happened. During the time plaintiff was hospitalized in the prison's infirmary, he was approached by a man in civilian clothes who identified himself as

4

Captain Maynard from Connecticut. Plaintiff thought this person was a Connecticut State Police Officer and told him what happened in Connecticut at NCI-Somers. Captain Maynard took pictures of some of the plaintiff's bruises and injuries, while plaintiff was in restraints.

The following day, on November 10, 1999, several Virginia State prison officials came to plaintiff and took pictures of some of plaintiff's bruises and injuries while he was in restraints. The prison doctor at Wallens Ridge State Prison had ordered that plaintiff be examined by a back specialist and have a CAT scan done for his head injuries, but plaintiff never received this treatment after the doctor was transferred to another prison.

Prior to this incident on November 8, 1999, plaintiff requested to be transferred out of Connecticut or Northern CI because he was having some serious problems with some of the defendants and guards at Northern CI. Plaintiff Robinson had lodged a number of complaints against some of these defendants and other prison guards at Northern CI for assaults, threats and constant harassment against him, but Defendant Myers and other DOC officials refused to move plaintiff or these guards.

The defendants at Northern CI planned this attack against plaintiff because they saved plaintiff for last and told him that they were going to get him before he left.

After plaintiff was put in Northern CI, DOC staff David Serkosky started working there, and staff harassment escalated against the plaintiff, because all of the employees that worked at Northern CI were made aware that the plaintiff was convicted for assaulting Serkosky, and this created a great deal of animosity towards plaintiff.

None of the defendants made any effort to either restrain the other co-defendants,

contrary to their duty and obligation, or to protect the plaintiff, or prevent the violations of the plaintiff's rights, despite their being in a position to do so.

As a consequence of the actions of the defendants, and the omissions of the defendants, the plaintiff suffered injuries to his eyes, face, head, neck, mouth, back, stomach, groin, arms, legs, wrists, ankles, ears and knees, as well as physical pain and disability and fear for his life, creating mental and emotional anguish and distress.

All of the defendants actively participated in the above-described wrongful acts and willful misconduct by cooperation or request, and as to each act complained of lent aid or encouragement to the wrongdoer.

## II. ARGUMENT

### A. STANDARD FOR MOTION TO DISMISS

A motion to dismiss functions "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which may be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1986). "In ruling on a motion to dismiss, a court must construe in plaintiff's favor any well pleaded allegations in the complaint." Allen vs. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2nd Cir. 1991). "Dismissal is proper only where it is appears beyond doubt the plaintiff can show no set of facts in support of his claim which would entitle him to relief." Id. "A court must accept the allegations contained in the complaint as true and draw all reasonable inferences in

favor of the non-movant: the standard is applied with particular strictness when the plaintiff complains of a civil rights violation." Branham vs. Clark, 927 F.2d 698, 705 (2nd Cir. 1991).

**B.     THE PLAINTIFF TOOK ALL STEPS NECESSARY TO PROPERLY SERVE DEFENDANTS ZIERDT, TAVAREZ, REID, NAPIER, BENDELOW AND RYAN.**

The defendants argue that service was not properly executed against them. However, defendants' counsel filed a general appearance to represent the defendants in this action. Therefore, defendants have waived improper service as a defense.

The filing of a general appearance by an attorney duly authorized constituted waiver of any defect in service and gave the court jurisdiction of the person of the defendant. Landy v. Cohen, 12 Conn. Supp. 201 (1943). See Hammond v. Parker, 129 A.2d 793, 20 Conn. Supp 193 (1957). In this case, a general appearance was filed for Defendants Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan. (Court Docs. #47, 48, 49, 50, 52, 58 and 64). This action constitutes both procedural and actual waiver of any defect claimed in the service. Id.

Federal Rules of Civil Procedure Rule 4(e) (1) states that service upon an individual is to be made pursuant to the law of the state in which the district court is located. In this case, the law of Connecticut service applies. Since a general appearance constitutes waiver in Connecticut, See Landy and Hammond, supra, the defendants through their duly authorized attorney, waived any defect by the filing of his appearance on behalf of Defendants Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan. "It is fundamental that jurisdiction over a person can be obtained by waiver." Pitchell v. City of Hartford, 247 Conn. 422, 428 (1999), citing

7

United States Trust Co. v. Bohart, 197 Conn. 34, 39, 495 A.2d 1034 (1985) ("unlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver").

Furthermore, on October 31, 2002, the plaintiff filed a Motion to Proceed In Forma Pauperis. (Court Doc. #1). On or about October 20, 2004, the Court ordered the plaintiff to complete a USM-285 form for all defendants, with the exception of Defendant Zierdt, and to return same, along with a completed notice of lawsuit and waiver of service form, as well as a copy of his Amended Complaint, for each defendant, within twenty (20) days of the date of the order. (Fitzsimmons, J.) (Court Doc. # 25).

The plaintiff then asked for an additional twenty (20) days within which to comply with the Court's October 20, 2004 order (Court Doc. # 26), which was granted on December 8, 2004. (Court Doc. #28).

The plaintiff sought leave to amend his complaint, to add Defendant Zierdt on or about December 23, 2004 (Court Doc. #30), which was granted by the Court on or about January 4, 2005. (Court Doc. #31).

When returning the USM-285 forms to the Court, with the notice and waiver forms, the plaintiff included a set of forms for Defendant Zierdt, and said forms were forwarded to the U.S. Marshal for service by the Court on or about January 26, 2005. (See Marshal's Return, Marked as Exhibit A).

At this time, the plaintiff has complied with all Court Orders relative to service of process for all defendants, pursuant to his original Motion to Proceed In Forma Pauperis.

Since Defendant Zierdt's previous Motion to Dismiss, arguing insufficiency of service, the plaintiff has sought to serve the defendants through the U.S. Marshal, but has been unsuccessful in ascertaining said defendants' whereabouts.

The plaintiff has attempted to retrieve the information, with all of the assistance that can be provided to him through Inmates' Legal Assistance Program, as well as through discovery requests, but at this time, the defendants have failed to respond to such requests.

Moreover, while the defendants' have failed to answer the plaintiff's discovery requests, they, themselves, have filed discovery requests with which the plaintiff has complied, including conducting a deposition of the plaintiff. As the purpose of serving process on a defendant is to put such defendant on notice that he is being sued and to make the defendant aware of the claims that a plaintiff has made against him, for the defendants in the above-captioned matter to argue that they are not aware of the plaintiff's claims in this case is ludicrous.

Based on the above, the defendants have waived any defect in service of process, and therefore, the defedants' Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan, Renewed Motion to Dismiss should be denied.

## III.    **CONCLUSION**

For the foregoing reasons, the plaintiff respectfully requests that the Court not dismiss his Third Amended Complaint against Defendants Zierdt, Tavaraz, Reid, Napier, Bendelow and Ryan.

RESPECTFULLY SUBMITTED,

By: _____
Shawn Robinson, PRO SE
#430720
P.O. Box 861
Trenton, NJ 08625-0861

_____
On the Memorandum
Jessica J. York, Esq.
Inmate's Legal Assistance Program
78 Oak Street
Hartford, CT 06106
Fed. Bar. No.:CT 20666

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following counsel on this 27 day of September, 2006:

MRS. ANN E. LYNCH, ESQ.
ATTORNEY GENERAL'S OFFICE
915 LAFAYETTE BOULEVARD
110 SHERMAN STREET
HARTFORD, CT 06105-2294

MR. ROBERT A. RHODES, ESQ.
HALLORAN & SAGE, LLP
315 POST ROAD WEST
WESTPORT, CT 06880

_____
Shawn Robinson, PRO SE