UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SHAWN ROBINSON | : | PRISONER<br>CIVIL NO. 3:02CV1943(CFD)(TPS) |
|  | : |  |
|  | : |  |
| V. | : |  |
|  | : |  |
| MICHAEL HOLLAND ET AL | : | JANUARY 10, 2007 |

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

### <u>FACTS</u>

Plaintiff is currently incarcerated pursuant to a July 18, 1991 mittimus issued in

Connecticut Superior Court, TTD CR90-42299T for violation of a) Connecticut General

Statutes § 53a-60(a)(5), assault in the second degree, one count sentencing plaintiff to 10

years, b) Connecticut General Statutes §53a-179b, rioting in a correctional institution,

one count sentencing plaintiff to 25 years consecutive to count 1, and c) Connecticut

General Statutes §53a-174a, possession of weapon or dangerous instrument in

correctional institution, sentencing plaintiff to 10 years consecutive to counts 1 and 2 for

a total effective sentence of 45 years.    See Local Rule 56(a)(1) statement par. 1.

On November 8, 1999, plaintiff left the Northern Correctional Institution for a

transfer to the Wallens Ridge Correctional Institution in Virginia.  See Local Rule

56(a)(1) statement par. 2.      Prior to November 1999, plaintiff had been housed out of

state and knew that Lynn Milling was the person he was to contact if he had any

problems.  See Local Rule 56(a)(1) statement par. 3.

In addition, a handbook which was provided to all Connecticut inmates upon their

arrival in Virginia, summarized the grievance procedure for out of state inmates.  See

Local Rule 56(a)(1) statement par. 4.        Under the grievance procedure,  individual

employee actions were grievable.   See Local Rule 56(a)(1) statement par. 5.  Under the

grievance procedure, the Interstate Compact Supervisor was the Unit 1 Reviewer and the

Director of Offender Classification and Population Management was the Level 2

Reviewer.  See Local Rule 56(a)(1) statement par. 6.

Plaintiff filed two grievances on or about January 17, 2000.  See Local Rule

56(a)(1) statement par. 7.   In Grievance 2VA-00-10 plaintiff wrote:

> On November 8, 1999, DOC staff brutally assaulted Mr. Robinson at
> Northern C.I. prior to his transfer and seriously injured him.  Staff denied
> him medical treatment and took his eye glasses.  DOC staff Holland,
> Deary, Falk, Serkosky, Warczyk and others viciously attack him without
> provocation and are trying to cover it up.

See Local Rule 56(a)(1) statement par. 8.  .

> Under Action Requested plaintiff wrote:

> Provide the full names of all the staff involved-notify the State Police of
> this crime-Preserve all evidence-Provide copy of pictures and reports-
> Return eye glasses-Provide medical aid.

See Local Rule 56(a)(1) statement par. 9.

> Plaintiff's grievance was denied in part.    Under the reasons section,

> Major Milling wrote:

> With regards to the names of DOC and TransCor staff, state police
> notification, evidence collection and requests for pictures and photos, the
> grievance is denied as the DOC and State Police are currently
> investigating the matter.  With respect to medical aid, the grievance is
> denied as you were seen by medical staff at WRSMU on 11/8/99 and at
> WRSP upon arrival on 11/9/99.  You may request to see medical at WRSP
> if you feel you need medical care.  With respect to the eyeglass request,
> your grievance is upheld.  WRSP has ordered new glasses for you.

See Local Rule 56(a)(1) statement par. 10.

Plaintiff did not appeal the Level I response.  Local Rule 56(a)(1) statement par. 11.    Plaintiff filed numerous level 2 grievances prior to November 1999.  See attached level 2 grievances.    Local Rule 56(a)(1) statement par.  24.

The DOC's Inmate Grievance Form which plaintiff used in this case requires, in paragraph 2, that an inmate "[s]pecify dates, places, *personnel involved*, and how you were affected, …" See Local Rule 56(a)(1) statement par. 12.  However, in his grievance regarding the alleged use of force, plaintiff only named defendants Holland, Deary, Falk, and Wawrzyk. See Local Rule 56(a)(1) statement par. 13.    Plaintiff named no staff members as being responsible in the grievance he filed about his classification in Virginia.  See Local Rule 56(a)(1) statement par. 14.

However, at his deposition, plaintiff testified that  defendants Sabettini, Kearney, Correia,  Faucher, Manley, Norwood Strozier, Ames, Felton,  Rhodes Stuckenski and Kuhlman, Seiffert, Faneuff,  Feltman, Mitchell, Pepe and Wilcox  either participated in beating him and/or witnessed the beating and failed to intervene.  See Local Rule 56(a)(1) statement par. 15-21.

Also at his deposition, plaintiff testified that he named Captain Zacharewicz and Major Lajoie as defendants only because he believed that if Captain Zacharewicz and Major Lajoie had told staff not to assault plaintiff, he would not have been beaten.    See Local Rule 56(a)(1) statement par.  22.  There was no other reason why plaintiff sued these defendants.    Similarly, plaintiff testified with regard to Lt. Knapp that he must have "had prior knowledge" that plaintiff would be assaulted.  See Local Rule 56(a)(1) statement par. 23.    Plaintiff based this belief solely upon Lt. Knapp's rank, that he was a

good lieutenant who plaintiff had never had a problem with in the past.  See Local Rule 56(a)(1) statement par. 23

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment  ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*  A "material fact" is one whose resolution will affect the ultimate determination of the case.  *Id.*  In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party.  *Id.,* at 255.  *See also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921, 11 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which is designed to secure the just, speedy and inexpensive determination of every action.

*Celotex, Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *Capitol Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 541 (2d Cir.),

*cert. denied*, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." *Celotex Corp.*, at 323-324.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Those facts that are material will be identified by the substantive law governing the case. *Anderson,* 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. *Knight v. Fire Insurance Company*, 804 F.2d 9, 12 (2nd Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). The evidence must be presented in a manner consistent with its admissibility at trial. *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979)(in ruling on summary judgment motion, the court properly relied upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third persons, and hearsay which does not fall under one or more exceptions listed in rules 803-805 of the Federal Rules of Evidence, may not be properly considered. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.*, 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stansy Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941). Moreover, the plaintiff must point to specific evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.

*Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

<u>**ARGUMENT**</u>

I.    <u>**THE PLAINTIFF'S COMPLAINT IS BARRED BY THE PRISON LITIGATION REFORM ACT**</u>

**A.  PLAINTIFF DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES BECAUSE HE DID NOT APPEAL THE LEVEL I DENIAL**

Plaintiff did not appeal the denial of his Level I grievance, regarding the alleged excessive force used against him.    Thus, because plaintiff did not exhaust his administrative remedies, summary judgment should issue in this case.  .

"A prisoner is precluded from filing a Section 1983 action concerning prison conditions until such administrative remedies as are available have been exhausted." 42 U.S.C. § 1997e(a).    The exhaustion requirement applies to excessive-force claims as well as other complaints about general conditions of prison life.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).    Exhaustion of administrative remedies is required regardless of whether the precise relief desired by the plaintiff is available in the administrative context, or whether participation in the administrative process might for some reason be deemed futile.  *Booth v. Churner*, 532 U.S. 731, 738-40, 149 L. Ed. 958, 121 S.Ct. 1819 (2201) (requiring exhaustion regardless of whether the relief sought is available through the administrative grievance process).    Their can be no doubt: the plaintiff was required by the PLRA to exhaust all available administrative remedies prior to filing this lawsuit in federal court, or face dismissal of those claims.

Untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.  *Woodford v. Ng*o, 126 S.

Ct. 2378 (2006). The PLRA requires "proper exhaustion" which "'means using **all steps** that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 2385 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1074 (7th Cir. 2002)). PLRA exhaustion thus "demands compliance with an agency's deadlines and other critical procedural rules." *Id* at 2386.

The Second Circuit Court of Appeals has stated that the reasons underlying the exhaustion purposes are great and not to be disregarded.

> Requiring Ruggiero to grieve his mistreatment before filing suit despite the relief afforded by his transfer not only comports with our precedent, it is also consistent with the purposes of the PLRA. That law was meant [to] reduce the number of prisoner suits by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter,* 534 U.S. at 525. Giving prison officials the first opportunity to address prisoners' complaints serves several purposes. Such an opportunity allows the prison to take corrective action, which may satisfy the prisoner and obviate the need for litigation; it might result in improvements to prison administration; and, for those cases that do find their way into the courts, it will facilitate adjudication by ensuring a fully-developed administrative record that "clarifies the contours of the controversy." Id. While Ruggiero may not have been interested in the results that pursuing his claim through OCCF's grievance procedure would have yielded, the larger interests at stake under the PLRA were at issue, and thus exhaustion was required.

*Ruggiero v. County of Orange*, F.3d (2d Cir. 2006).

In the Second Circuit, a district court must consider three factors before the court can decide whether the prisoner has failed to exhaust available administrative remedies. Those three factors are: (1) whether administrative remedies were "available" to the prisoner; (2) whether the defendants are estopped from asserting an exhaustion defense; and (3) whether special circumstances exist that excuse the prisoner from the exhaustion requirements. *See Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 686-91 (2d Cir. 2004).

The Second Circuit has not addressed how the three prong approach outlined above has been affected by *Woodford*. In fact, just before the issuance of the decision, the Second Circuit declined to "determine what effect *Woodford* has on [its] case law in this area." *Ruggiero v. County of Orange*, 467 F.3d 170, (2d Cir. 2006).

The Connecticut Department of Correction's Administrative Directive 9.6 ("Administrative Directive" or "A.D.") provides an administrative procedure under which prisoners may seek redress of grievances. Local Rule 56(a)(1) statement par. 5. Administrative Directive 9.6 provides that the following matters are grievable:

1.     The interpretation and application of policies, rules and procedures of the unit, division and Department.

2.     The existence or substance of policies, rules and procedures of the unit, division and Department in accordance with Section 13 below.

3.     Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.

4.     Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.

5.     Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.

6.     Property loss or damage.

Local Rule 56(a)(1) statement par. 5.

Here, plaintiff filed two grievances on or about January 17, 2000, more than 30 days after the alleged use of excessive force. Local Rule 56(a)(1) statement par. 7. According to the inmate handbook and Administrative Directive 9.6, all grievances were to be filed within 30 days of the cause. Local Rule 56(a)(1) statement par. 6. Plaintiff testified that he knew, from his days with the Federal Bureau of Prisons that he needed to

send grievances to Major Milling.  Local Rule 56(a)(1) statement par. 7.   Clearly the

plaintiff knew of his responsibility to grieve matters encompassed by A.D. 9.6, because

he filed two grievances.

Plaintiff's grievances which he dated January 17, 2006 and sent to Major Milling

were not timely.   Local Rule 56(a)(1) statement par. 8-10.   Moreover, plaintiff failed to

pursue a level 2 and 3 review.  Local Rule 56(a)(1) statement par. 11.  In short, plaintiff

failed to exhaust his administrative remedies prior to filing this lawsuit.    Accordingly,

summary judgment should issue in defendants' favor in this case.

### B.   PLAINTIFF DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES AS TO ALL CLAIMS AGAINST EACH NAMED DEFENDANT PRIOR TO FILING SUIT[1]

All of the plaintiff's claims that the defendants used excessive force, failed to

protect him from excessive force, denied him medical treatment, denied him freedom of

speech, and acted pursuant to a conspiracy, are all matters for which a grievance must be

filed.  Administrative Directive 9.6.

In addition, under the PLRA plaintiff must exhaust all claims against each

defendant prior to suing them.  By not naming all of the defendants in his grievances, he

---

[1]    The undersigned recognizes that this Circuit, along with the Seventh and Ninth Circuits, have rejected the "total exhaustion rule", though this rule has been affirmed by the Sixth, Eighth and Tenth Circuits.  The "total exhaustion rule" requires inmates, pursuant to the PLRA administrative grievance process, to fully exhaust all issues and identify in each grievance all of the individuals they intend to sue, prior to filing a federal action.  If either of the two are lacking, the entire complaint, not just the unexhausted portion, must be dismissed.  Because of this split in the circuits, the United States Supreme Court recently granted certiorari and heard oral argument in the case of *Williams v. Overton, et al*, 05-7142, (6th Circuit), which involves this issue.  In the event the United States Supreme Court rules in favor of the "total exhaustion rule", the plaintiff's Complaint should be dismissed for the reasons set forth herein.

did not preserve his right to sue them. *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) ("a prisoner [must] file a grievance against the person he ultimately seeks to sue").

The DOC's Inmate Grievance Form which plaintiff used in this case requires, in paragraph 2, that an inmate "[s]pecify dates, places, *personnel involved*, and how you were affected, …". However, in his grievance regarding the alleged use of force, plaintiff only named defendants Holland, Deary, Falk, and Wawrzyk. Plaintiff filed a grievance with regard to his excessive force and failure to protect claims only as to defendants Holland, Deary, Falk and Wawryzk.[2] Thus to the extent, plaintiff's Level 1 January 17, 2000 grievance somehow satisfies plaintiff's obligation to exhaust his administrative remedies, plaintiff has exhausted his claims only as to defendants Holland, Deary, Falk and Wawryzk. *See also*, *Burton v. Jones*, 321 F.3d 569 (6th Cir. 2003) ("for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process.") *Id*. at 575. The plaintiff is, consequently, barred by the PLRA from bringing suit against any of the other defendants since they were not identified in either grievance.[3]

Finally, because plaintiff has not totally exhausted his claims as against all defendants, this action should be dismissed in its entirety. *See, Jones Bey v. Johnson*, 401 F.3d 801 (6th Cir. 2005); *Abdul-Muhammand v. Kemper*, 450 F.3d 352 (8th Cir. 2006);

---

[2]  Even as to these defendants, it is submitted that plaintiff did not properly exhaust his claims. See discussion above.

[3]  Plaintiff testified at length at his deposition that he witnessed defendants Sabettini, Kearney, Correia, Faucher, Manley, Norwood Strozier, Ames, Felton, Rhodes Stuckenski and Kuhlman, Seiffert, Faneuff, Feltman, Mitchell, Pepe and Wilcox either participate in beating him and/or their presence in the immediate area. See Local Rule 56(a)(1) statement par. 15-21.

B*oyd v. Ferguson*, No. 05-1543, 2006WL 1793267, *2 (10th Cir. 2006) ("Because Boyd did not completely exhaust administrative remedies for all of his claims, §1997e(a) requires his complaint to be dismissed").

Therefore, even in the event this Court holds that the plaintiff did exhaust one or more of his claims against some of the defendants summary judgment is nevertheless still due to all defendants under the total exhaustion rule.   Indeed, the plaintiff never exhausted his claims against defendants Sabettini, Norwood, Faucher, Rhodes, Manley, Faneuff, Seiffert, Kearney, Correia, Lynch, Strozier, Ames, Felton, Mitchell, Kuhlman, Thomas, Smith, Knapp, Daire, Chapman, Germond, Bernard, Schreindorfer, Lajoie, Zacharewicz, Wilcox, Pepe, and Myers, because he did not identify any of them in his grievances.    Accordingly, summary judgment should issue in defendants' favor in this case.

**II      PLAINTIFF CANNOT PROVE THAT DEFENDANTS  LAJOIE, ZACHAREWICZ AND KNAPP WERE PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATIONS**

Plaintiff cannot prove that defendants Lajoie, Zacharewicz, or Knapp did anything that violated plaintiffs' constitutional rights.   Accordingly, summary judgment should be rendered in their favor.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." Rizzo v. Goode, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. §1983).   Where damages are sought in a §1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation.   Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983.  See, e.g., Gill v. Mooney,

824 F.2d 192, 196 (2d Cir. 1987); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033, 38 L.Ed. 2d 324, 94 S.Ct. 462 (1973), rev'd on other grounds, Graham v. Connor, 490 U.S. 386 (1989); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 55 L.Ed. 2d 792, 98 S.Ct. 1282 (1978).  Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of respondeat superior does not suffice to state a claim under §1983.    Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95, 56 L.Ed. 2d 611, 98 S.Ct. 2018 (1978).  Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in  the  . . . chain of command."  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).  A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation.  Williams v. Smith, 781 F.2d at 323-24; Meriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989).  "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).

In <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1997), the plaintiff sent two letters to the defendant prison official. The first letter, an appeal from an administrative segregation hearing, was referred by the receiving official to another official for determination. The second letter was a status inquiry to which the official responded by informing the prisoner that a decision had been rendered. The Second Circuit found that this conduct on the part of the defendant official, without more, "[did] not demonstrate the requisite personal involvement" to support a finding of liability. <u>Id</u> at 51.

Similarly, in <u>Colon v. Coughlin</u>, 58 F.3d 865 (2d Cir. 1995), the Second Circuit found insufficient personal involvement by an official who received a prisoner's letter complaint but did not investigate the prisoner's claims, noting that "the contents of the letter are not specified; we do not know, therefore, whether the letter was one that reasonably should have prompted [the official] to investigate." <u>Id</u>. at 873.

> [C]onclusory allegations alone are insufficient to establish personal involvement under §1983. <u>See, e.g.,Ellis v. Guarino</u>, 2004 U.S. Dist. LEXIS 16748, No. 03 Civ. 6562 DAB AJP, 2004 WL 1879834 at *10 (S.D.N.Y. Aug. 24, 2004) ("Plaintiff's conclusory allegation, by itself, cannot sustain a § 1983 claim."); <u>Romer v. Morgenthau</u>, 119 F.Supp.2d 346, 355 (S.D.N.Y. 2000) ("Mere allegations that defendants knew of the wrongs does not establish personal involvement."). As the Second Circuit has stated, we are mindful of the generous approach to pleading outlined in <u>Conley v.Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957) . . . however, we think that Conley permits a pleader to enjoy all favorable inferences from facts that have been pleaded, and does not permit conclusory statements to substitute for minimally sufficient factual allegations. <u>Furlong v. Long Island College Hosp.</u>, 710 F.2d 922, 927 (2d Cir. 1983).

> <u>LM Business Associates Inc. v. Ross</u>, 2004 U.S. Dist. LEXIS 28467 (W.D.N.Y. 2004)(attached).

Here, at his deposition, plaintiff testified that he named Captain Zacharewicz and Major Lajoie defendants based solely on plaintiff's belief that if either of these men told

staff not to assault plaintiff, he would not have been assaulted. Local Rule 56(a)(1) statement par. 22. Plaintiff acknowledged that neither one used physical force upon plaintiff and were not present during the time he was being assaulted in the A& P area. Local Rule 56(a)(1) par. 22. Rather plaintiffs alleges that defendants Lajoie and Zacharewicz were highly regarded and if either man had given an order that plaintiff "not be assaulted" plaintiff would have never been assaulted. Similarly, plaintiff stated that although Lt. Knapp was a good man, he somehow "knew" that plaintiff would be assaulted. Local Rule 56(a)(1) statement. When asked how Lt. Knapp knew this, plaintiff could state only that because Knapp was a good lieutenant and straightforward, he must have known that plaintiff would be assaulted. This lawsuit cannot proceed against Zacharewicz, Lajoie and Knapp based solely upon plaintiff's suspicions, speculation and/or beliefs that 1) had these men had given an order that staff was not to assault plaintiff, he would have suffered no harm and/or 2) that they somehow knew in advance that plaintiff would be assaulted. Quite simply, plaintiff has not articulated any personal involvement by Zacharewicz, Lajoie and Knapp in any constitutional violation of the plaintiff. Accordingly, as a matter of law, summary judgment must issue in favor of these defendants.

### III.   SUMMARY   JUDGMENT   SHOULD   ISSUE   ON PLAINTIFF'S CLAIMS UNDER 42 U.S.C. SECTIONS 1985 AND 1988

Finally, plaintiff seemingly brings claims under 42 U.S.C. §§ 1985and 1988 as well as 42 U.S.C. § 1983. Section 1985 prohibits conspiracies to interfere with civil rights. The plaintiff's allegations fail to comport with the requirements of 42 U.S.C. § 1985(1), (2) or (3). Subsection (1) prohibits conspiracies to prevent federal officials from

performing their duties.  Subsection (2) of § 1985 generally prohibits conspiracies aimed at deterring witnesses from participating in either a federal or state judicial proceedings. *See Chahal v. Paine Webber Inc.*, 725 F.2d 20, 23 (2d Cir. 1984).  These two subsections clearly do not pertain to the plaintiff's allegations.

Section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws.  Under this subsection , a plaintiff must allege:

> (1)  a conspiracy;  (2)  for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws;  (3)  an act in furtherance of the conspiracy;  (4)  whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Julian v. New York City Transit Auth.*, 857 F. Supp. 242, 252 ((E.D.N.Y. 1994), *aff'd*, 52 F.3d 312 (2d Cir. 1995).  Furthermore, the conspiracy must be motivated by some racial or perhaps otherwise class based, invidious discriminatory animus . . . .  *Thomas v. Roach,* 165 F.3d 137 146-47 (2d Cir. 1999).

Plaintiff is bound to do more than merely state vague and conclusory allegations respecting the existence of conspiracies.  It is incumbent upon him to allege with at least some degree of particularity overt acts in which defendants engaged that were reasonably related to the promotion of a claimed conspiracy.  *Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959), *rev'd in part on other grounds*, 300 F.2d 34 (9th Cir. 1962).

> In a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy. Therefore, the certainty we look for in a proper complaint under the Civil Rights Statutes, is not in the general allegations of conspiracy, purpose, intent and color of authority but the certainty and substance in the particular acts which are alleged to have caused damage.

The real question is whether or not the amended complaint, in addition to the general allegations referred to above, sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.

Id. at 295 (emphasis added).

In *Jones v. Owen Federal Bank*, 147 F. Supp. 2d 219 (S.D.N.Y. 2001), the Court found that claims of conspiracy to violate the civil rights of a property owner whose mortgage default had led to foreclosure were insufficient to withstand a motion to dismiss. Plaintiff claimed that defendants conspired against him during foreclosure proceedings, but the court held that the alleged claims "merely recited the state foreclosure history and are not sufficiently clear to have provided … a fair understanding of what the plaintiff is complaining about or to have allow the [defendants] to know whether there is a legal basis for recovery." *Jones*, 147 F. Supp. 2d at 224. To claims that the defendants engaged in conduct proscribed by the Fair Debt Collection Practices Act which violated his civil rights, the court found that "Plaintiff fails to allege what that conduct consisted of, who specifically engaged in the conduct and when the conduct took place." *Id*.

Similarly, a court found that allegations devoid of substantive facts were too conclusory as to be actionable in *Vitale v. Nuzzo, Jr., et al.*, 674 F. Supp. 402 (D. Conn. 1986). In *Vitale*, the plaintiff alleged that defendants has conspired with the state trial judge to deprive him of equal protection rights as well as the Eighth Amendment guarantee against cruel and unusual punishment.

The Court held:

It is of course generally true that a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations", *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957), and a pro se complaint is naturally held to "less stringent standards than formal pleadings drafted by lawyers", *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972). On the other hand, there must be factual allegations of substance beyond conclusory labels and assertions, "at least some allegations of facts indicating a deprivation of civil rights", *Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir. 1975). (citation omitted). That minimum safeguard to indicate the genuine existence of a federally actionable claim, moreover, is particularly appropriate when the complaint rests on a broad claim of "conspiracy", in which case "diffuse and expansive allegations are insufficient", *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977).

*Id.* at 404 (emphasis added). *See e.g., Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383 (S.D.N.Y. 2000); *Scheiner v. Wallace*, 1995 U.S. Dist LEXIS 11070 (S.D.N.Y. 1995); *See also, e.g., Powell v. Jarvis,* 460 F.2d 551 (2d Cir. 1972).

Here, the plaintiff does not allege and cannot prove any racial or invidious discriminatory motivation for the use of force against him, defendants alleged failure to intervene and/or the denial of medical care. *See Smith v. Walsh,* 519 F.Supp. 853, 856 (D. Conn. 1981) (the complaint must allege that there was racial or class-based animus behind the conspiracy). Because the plaintiff fails to provide a factual basis for a conspiracy claim, summary judgment should issue on the plaintiff's section 1985 claims. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Finally, 42 U.S.C. § 1988 does not provide an independent cause of action. *See Moor v. Alameda County,* 411 U.S. 693, 702-06, *reh'g denied*, 412 U.S. 963 (1973). Moreover, to the extent that the plaintiff is seeking attorneys' fees pursuant to section 1988(b), his claim also fails. A pro se litigant is not entitled to attorney's fees under

section 1988. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *Presnick v. Santoro*, 832 F. Supp. 521, 531 (D. Conn. 1993). Accordingly, summary judgment should issue on plaintiff's claims under 42 U.S.C. §§ 1985, 1986 and 1988.

## IV.   THE PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED.

The plaintiff's remaining state law claims should be dismissed pursuant to 28 U.S.C. § 1367(c)(3). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction." As the Practice Commentary following 28 U.S.C.A. § 1367 notes, in this situation, judicial discretion is "a particularly important element. Here, the 'may' in 'may decline' has a major role to play." Commentary at p. 835. The Commentary goes on to state that the district court, in exercising its discretion, should undertake a "case-specific analysis," considering such factors as the point in the litigation when the main claim is dismissed.

Justice Brennan, in the well-known case of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), stated that principles of comity, federalism, and the interests of justice dictate that needless decisions of state law should be avoided. Under *Gibbs,* a federal district court should consider and weigh in each case the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case involving pendent state-law claims. *Gibbs* suggested strongly that, if federal claims are dismissed before trial, the state claims should also be dismissed. *Id.,* 383 U.S. at 726-27, 86 S.Ct. at 1138. *See also, Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); 3A Moore's Federal Practice ¶ 18.02 {4.2} at 18-22; *Pitchell v. Callan,* 13 F.3d

545 (2d Cir. 1994). Indeed, the Second Circuit has made clear that, where the federal claims are dismissed prior to trial, declining to exercise jurisdiction over the state claims is the preferred course of action. *See, e.g., DiLaura v. Power Authority of New York,* 982 F.2d 73 (2d Cir. 1992). Thus, where a plaintiff pleads a federal cause of action and derivative state law claims in the same complaint, the state law claims cannot survive a finding that the federal law claims are legally insufficient. *See Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir. 1997) cert denied 525 U.S. 823, 119 S.Ct. 66, 142 L.Ed. 2d 52 (1998); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995) (Having dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault, unlawful imprisonment, and malicious prosecution); *A. Aiudi & Sons v. Plainville,* 862 F. Supp. 737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated court's subject matter jurisdiction over state law claims).

Because there is no basis for federal jurisdiction in this case, plaintiff's supplemental state law claims of assault and battery, intentional infliction of emotional distress, negligence and false imprisonment should also be dismissed.

## V.   PLAINTIFF CANNOT MAINTAIN A COMMON LAW CAUSE OF ACTION FOR FALSE IMPRISONMENT

At all relevant times, plaintiff was incarcerated and serving a total effective sentence of 45 years. Notwithstanding this fact, plaintiff has sued defendants for false imprisonment. Because plaintiff was lawfully confined, summary judgment should issue on the false imprisonment claims.

"[F]alse imprisonment is the unlawful restraint by one person of the physical liberty of another." *Felix v. Hall-Brooke Sanitarium*, 140 Conn. 496, 499, 101 A.2d 500 (1953). False imprisonment comes within the category of intentional torts for which the

remedy at common law was an action of trespass. *McGann v. Allen*, 105 Conn. 177, 188, 134 A. 810 (1926).   Because plaintiff was at all times, lawfully confined, he cannot as a matter of law prove a false imprisonment claim. *Felix v. Hall-Brooke Santorium*,  140 Conn at 499.

> [T]here is no cause of action for false imprisonment  if the plaintiff was arrested pursuant to a facially valid warrant. The rule has been followed through the years by our courts; *Whitten v. Bennett*, 86 F. 405, 406 (2d Cir.  1898); *Clewley v. Brown Thomson, Inc.*, 120 Conn. 440, 444, 181 A. 531 (1935); *McGann v. Allen*, 105 Conn. 177, 188, 134 A. 810 (1926); *Lo Sacco v. Young*, 20 Conn. App. 6, 19, 564 A.2d 610, *cert. denied,* 213 Conn. 808, 568 A.2d 793 (1989); and continues to be the law in this jurisdiction.

*Outlaw v. City of Meriden,* 43 Conn. App 387, 392 (1996).

Here, because plaintiff was serving a 45 year sentence at all times referenced in his complaint, there is no factual or legal basis for his false arrest claims and summary judgment should be rendered in favor of defendants on them.

## VI.    STATUTORY IMMUNITY, PURSUANT TO CONN. GEN. STAT. § 4-165, BARS THE NEGLIGENCE CLAIMS AGAINST ALL DEFENDANTS

Connecticut General Statutes § 4-165 immunizes state officers or employees from suit as long as they were not acting either outside the scope of their employment or wanton reckless or malicious.  In this case, summary judgment must issue on plaintiff's negligence claims against defendants.

Section 4-165 provides in relevant part:

> No state officer or employee shall be personally liable for damages or injury, not wanton, reckless, or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damages or injury shall present it as a claim against the state under the provisions of this chapter

In discussing the meaning of statutory immunity, the Connecticut Appellate Court has stated:

> [I]n order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must provide, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . **Such conduct is more than  negligence, more than gross negligence**. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. In sum, such conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."

*Manifold v. Ragaglia*, 94 Conn. App. 103, 115-16 (2006)(emphasis added).

Defendants have statutory immunity under § 4-165 from negligence claims and thus summary judgment must issue in defendants' favor on these claims.

## **CONCLUSION**

Wherefore, all the foregoing reasons, defendants respectfully move for summary judgment in this matter.

DEFENDANTS
Jerry Wawryzk Et Al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:
      /s/
Ann E. Lynch
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct08326
E-Mail:  ann.lynch@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed to the following on this _____ day of January, 2007:

     Shawn Robinson, Inmate #430720
     New Jersey State Prison
     P.O. Box 861
     Trenton, NJ 08625-0861

     Robert Rhodes, Esq.
     Halloran and Sage, LLP
     315 Post Road West
     Westport, Ct 06880

                                 /s/
                               Ann E. Lynch
                               Assistant Attorney General