JUL 1 1 2007

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2007 JUL 30 P 2: 04

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

SHAWN L. ROBINSON
PLAINTIFF

V.

MICHAEL L. HOLLAND, ET AL
DEFENDANTS

:        CIV.NO.
:        3:02 CV 1943 (CFD)(TPS)
:
:
:        3RD JULY_____, 2007
:

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This action is brought by plaintiff, Shawn L. Robinson, against defendants, pursuant to 42 U.S.C. § 1983, who acting under color of state law, charter, ordinance, regulation, custom or usage, have unlawfully violated plaintiff's civil and due process rights by intentionally subjecting plaintiff to unreasonable force and cruel and unusual punishment. These actions further violated the Eighth and Fourteenth Amendments to the United States Constitution.

The defendants, Zierdt, Reid, Napier, Ryan, Bendelow and Tavarez, have moved, pursuant to Fed. R. Civ. P. R. 56, for Summary Judgment as to all claims. Plaintiff opposes the motion on the grounds that there are many material issues of fact in dispute. The defendants have failed to establish that there are no material disputed facts to be tried. Plaintiff submits this memorandum, exhibits and an attached *Statement of Material Facts in Dispute* in accordance with Local Rule 56(a)(2).

## II. <u>STATEMENT OF FACTS</u>

On or about November 8, 1999, the plaintiff Shawn L. Robinson was a Connecticut state prisoner housed at Northern Correctional Institution, in Somers, Connecticut, who was placed in full transportation restraints by employees of Transcor America, Inc., including Defendants B. D. Bendelow, Anthony Napier, and Plute for an administrative out-of-state transfer to Wallens Ridge State Prison in Big Stone Gap, Virginia.

At or about the date and time above, before plaintiff Robinson was transferred out-of-state to Virginia, Defendants Michael L. Holland, Jerry L. Wawrzyk, John E. Deary, Randy R. Sabettini, John Norwood and a number of other prison guards brutally beat and tortured plaintiff Robinson without provocation, while plaintiff Robinson was in full restraints, defenseless. Defendant Holland initiated this brutal assault on plaintiff Robinson, when he, for no justifiable reason, sprayed mace into the plaintiff's eyes and stated, "This is for my white brother, David Serkosky-Nigger," while plaintiff was urinating into a commode in holding cell four and still in full transportation restraints.

Just after the plaintiff was sprayed, Defendant Wawrzyk slammed plaintiff to the floor. At which time, Defendant Sabettini kicked the plaintiff's eyeglasses off his face.

When the plaintiff called out to Defendant Neal H. Kearney for help, due to his high ranking supervisory status as a major, Defendant Kearney only started to laugh at the plaintiff, along with all the other supervisors and prison guards who were present in the Admitting and Processing

2

Area.    When Defendant Kearney failed to intervene and stop this brutal attack by his subordinates, and just laughed about it, more prison guards came into holding cell four and joined defendants Holland, Wawrzyk, Sabettini and Deary in brutally beating plaintiff Robinson.

The defendants beat plaintiff into another room and slammed plaintiff up against the wall of this room.  After which, the defendants began to torture plaintiff by pinning his body up against the wall and methodically inflicting injuries on his person.

Defendants Steve Faucher, Steve A. Rhodes, B. Correia, John Falk, T. Mitchell, B. Chapman, Germond and others held plaintiff while Defendant Deary and others dug their fingers and sharp objects into plaintiff's eyes, while other defendants struck plaintiff.   At the same time, Defendants Holland, Kevin M. Manley, William D. Faneuff, and others threatened to continue to mace and beat plaintiff if he did not open his eyes.  When the plaintiff was able to open his eyes, Defendant John Norwood threw some kind of hot, burning liquid into his eyes.

After Defendant Wilbur Strozier finished taking photographs of plaintiff, the defendants knocked plaintiff back to the ground and continued to beat him.

The defendants hog-tied plaintiff after knocking him down to the floor, and started pulling chunks of his hair out of his head.

The plaintiff was beaten all the way to and on the bus by defendants Faneuff, Faucher, Correia and others.

At no time did any of the defendants or medical staff at Northern CI give or offer plaintiff any

3

medical treatment or to flush the mace from plaintiff's eyes, before or after they placed plaintiff on the bus.

After the plaintiff was brutally beaten and tortured by those defendants who worked at Northern CI, he immediately informed the Transcor America employees on the bus that he wished to be taken to the hospital for medical treatment, as well as talk to the State Police or United States Marshals and have pictures taken of his bruises and injuries.

When the Transcor America employees stopped at Walker Reception Center to pick up additional Connecticut state prisoners to be transferred out-of-state to Virginia along with plaintiff, they informed some of the escorting defendants from Northern CI that plaintiff Robinson and Inmate Robert Joslyn, #212428 were asking the Transcor America employees to take them to the hospital and call the police against the Northern CI employees because they both wanted to press criminal charges against them and the other defendants at Northern CI who assaulted them. Instead of taking plaintiff to the hospital, the defendants forced the plaintiff to walk off the bus on his injured legs and ankles without any aid, into a holding cell in Walker Reception Center, where there was a number of Connecticut Department of Correction employees waiting.

After plaintiff was interrogated by these prison employees and told them who assaulted him, defendants Raymond Bernard and Cheryl Schreindorfer conducted a perfunctory cursory visual examination of plaintiff's injuries while he was still in full transportation restraints. Once the

4

visual examination was completed, Defendant Schreindorfer asked the prison guards present to

allow plaintiff to shower in order to decontaminate the mace he had been sprayed with but these

guards declined ~~his~~ *HER* request.

Before plaintiff was loaded back on the bus and transferred out-of-state to Virginia, plaintiff

asked the warden (Donahue) to notify the state police, because he wanted to press criminal

charges against the guards at NCI-Somers for assaulting him, but he told plaintiff that he would

have to contact the state police on his own.

Plaintiff had to endure an eighteen (18) hour bus ride in full transportation restraints with

multiple severe injuries.

The next day on November 9, 1999, plaintiff arrived at Wallens Ridge State Prison in Big

Stone Gap, Virginia. Once plaintiff was taken off the bus and processed, he was taken directly to

the facility's infirmary and hospitalized for several hours after informing Virginia state prison

officials what happened. During the time plaintiff was hospitalized in the prison's infirmary, he

was approached by a man in civilian clothes who identified himself as Captain Maynard from

Connecticut. Plaintiff thought this person was a Connecticut State Police Officer and told him

what happened in Connecticut at NCI-Somers. Captain Maynard took pictures of some of the

plaintiff's bruises and injuries, while plaintiff was in restraints.

The following day, on November 10, 1999, several Virginia State prison officials came to

plaintiff and took pictures of some of plaintiff's bruises and injuries while he was in restraints.

5

The prison doctor at Wallens Ridge State Prison had ordered that plaintiff be examined by a back specialist and have a CAT scan done for his head injuries, but plaintiff never received this treatment after the doctor was transferred to another prison.

Prior to this incident on November 8, 1999, plaintiff requested to be transferred out of Connecticut or Northern CI because he was encountering some serious problems with some of the defendants and guards at Northern CI. Plaintiff Robinson had lodged a number of complaints against some of these defendants and other prison guards at Northern CI for assaults, threats and constant harassment against him, but Defendant Myers and other DOC officials refused to transfer plaintiff or these guards.

The defendants at Northern CI planned this premeditated attack against plaintiff because they saved plaintiff for last and told him that they were going to get him before he left.

After plaintiff was placed at Northern CI, DOC staff David Serkosky started working there, and staff harassment escalated against the plaintiff, because all of the employees that worked at Northern CI were made aware that the plaintiff was convicted for assaulting Serkosky, and this generated a great deal of animosity towards plaintiff.

None of the defendants made any effort to either restrain the other co-defendants, in violation of their duty and obligation, or to protect the plaintiff, or prevent the violations of the plaintiff's rights, despite their being in a position to do so.

As a consequence of the actions of the defendants, and the omissions of the defendants, the

6

plaintiff suffered injuries to his eyes, face, head, neck, mouth, back, stomach, groin, arms, legs, wrists, ankles, ears and knees, as well as physical pain and disability and fear for his life, creating mental and emotional anguish and distress.

All of the defendants actively participated in the above-described wrongful acts and willful misconduct by cooperation or request, and as to each act complained of lent aid or encouragement to the wrongdoer.

## III. LEGAL ARGUMENT

### A. MOTIONS FOR SUMMARY JUDGMENT

"Summary judgment may not be granted unless 'the pleading, depositions, answers to interrogatories, and admissions of file, together with the affidavits if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)". Gallo v. Prudential Residential Services, 22 F.3d 1219,1223. (2d Cir. 1994). Further "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists" Id. In considering whether that burden has been met, "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." Id. See also, Eastway Constr. Corp. v. New York, 762 F.2d 243,249 (2d Cir. 1985).

"Summary judgment is ordinarily inappropriate where intent and state of mind are at issue."

<u>Montana v. First Federal Savings and Loan of Rochester</u>, 869 F.2d 100, 103 (2d Cir. 1989)

> A trial court must be cautious about granting summary judgment to an employer where, as here, its intent is in issue....Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate records. Affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Finally, the trial court's task at the summary judgment state of the litigation <u>is carefully limited to discovering whether there are any genuine issues of material fact to be tried, **not to deciding them.**</u>

<u>Gallo.</u>, supra at 1224. (emphasis added)

Accordingly, this Court has held, that "the burden falls on the moving party to establish that no relevant facts are in dispute." (citations omitted). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences *against* the moving party (citations omitted). For not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them (citations omitted). <u>Diamontopulos v. Brookside Corp.</u>, 683 F.Supp. 322, 325 (D.Conn. 1988) *citing* <u>Donohue v. Windsor Locks Board of Fire Commissioners</u>, 834 F.2d 54, 57-58 (2nd Cir. 1987).

**B.    PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ZIERDT, REID, NAPIER, RYAN, BENDELOW AND TAVAREZ WERE FILED WITHIN THE STATUTE OF LIMITATIONS.**

First, defendants Zierdt, Reid, Napier, Ryan, Bendelow and Tavarez argue that plaintiff's claims against said defendants were not filed within the Statute of Limitations.

Plaintiff originally filed his Complaint in this matter on or about October 31, 2002, (Court Doc. No. 2). In his original complaint, the plaintiff listed on the title page, "Seven John Does, including Transcor's Director and Five Employees."

The Court then, on December 12, 2002, ordered the plaintiff to file an amended complaint within twenty (20) days to describe the methods in which the plaintiff had exhausted his administrative remedies, (Court Doc. No. 6). After filing for and being granted additional time within which to comply with the Court's order, the plaintiff filed his First Amended Complaint on April 7, 2003, (Court Doc. No. 18).

In his Amended Complaint, filed pursuant to Court order, the plaintiff named defendants Reid, Napier, Bendelow, Tavarez, Ryan and Plute, as well as a John Doe defendant, as employees of Transcor America, Inc. (Court Doc. No. 18, ¶5). The plaintiff went on to describe how after the assault on him by Connecticut Department of Correction employees, he was placed on a bus under the custody of the Transcor employee defendants and requested to said defendants that he be transported to a hospital for medical treatment. (Id. ¶26- 27).

While waiting for the Court to rule on his Motion to Proceed *In Forma Pauperis*, the plaintiff

9

filed a Second Amended Complaint on or about January 5, 2004; wherein, he named defendants Zierdt, Napier, Bendelow, Tavarez, Ryan and Plute, as well as a John Doe defendant as employees of Transcor America, Inc. (Court Doc. No. 21, ¶5). Again, the plaintiff described how after the assault on him by Connecticut Department of Correction employees, he was placed on a bus under the custody of the Transcor employee defendants and requested to said defendants that he be transported to a hospital for medical treatment. (Id. ¶26- 27).

The Court then struck plaintiff's Second Amended Complaint for failure to request leave to amend on September 21, 2004 and ordered that the operative complaint in this matter be plaintiff's First Amended Complaint filed on April 7, 2003. (Court Doc. No. 24).

Plaintiff then filed a Motion to Amend and a Third Amended Complaint, identical to his Second Amended Complaint on December 23, 2004. (Court Doc. No. 30). Plaintiff's Motion to Amend was granted on January 4, 2005, (Court Doc. No. 31), which includes that one defendant, Zierdt, was added to the action.

Federal Rules of Civil Procedure, Rule 15(c)(2), provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." See also 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1497 (2d ed. 2006) ("[A]mendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding

10

pleading fall within Rule 15(c).").

"The fact that an amendment changes the legal theory on which the action was originally brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading," *Federal Practice and Procedure* Wright, Miller & Kame, Vol 68, § 1497, p. 94-95.

"It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated." (Internal cites omitted). Sharp v. Mitchell, 209 Conn. 59, 71-72 (1988).

"Rule 15(c) reads, 'Whenever the claim or defense asserted in an amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.'" Barthel v. Stamm, 145 F.2d 487, 490-491 (5th Cir. 1944).

"Rule 15(c) is based upon the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford, 3 Moore's Federal Practice para. 15.15 [3]. The objective of state statutes of limitations, to protect persons from the necessity of defending stale claims, is served under Rule 15(c), since the amendment will not relate back unless the original pleading has given fair notice to the adverse party that a claim is being asserted against him from some particular transaction or

11

occurrence." Wright, Law of Federal Courts, p. 276 (2d ed. 1970).

In the above captioned matter, the plaintiff filed his original complaint on October 31, 2002, within the three (3) year statute of limitations. The plaintiff described within the body of his complaint an incident which occurred to him on November 8, 1999. On the title page of his Complaint, the plaintiff listed "Seven John Does, including Transcor's Director and Five Employees." When plaintiff amended his complaint on April 7, 2003 and then again on December 23, 2004, the plaintiff substituted in the names for the Transcor America, Inc. employees and further described actions which occurred during the November 8, 1999 incident. The plaintiff "amplif[ied] [and] expand[ed]" what he had already alleged in the body of his original complaint. No entirely new or different factual situations were presented in his subsequent Amended Complaints.

Moreover, no defendant in this matter was served with a Notice or Complaint until after the plaintiff had filed his Amended Complaint, and in fact, until after his Second Amended Complaint was filed on January 5, 2004, (Court Doc. No. 21) and then struck by Court order on September 21, 2004, (Court Doc. No. 24). The Court did not order that any defendants be served until October 20, 2004, (Court Doc. No. 25). At that time, the operative Complaint named defendants Reid, Napier, Bendelow, Ryan and Tavarez, as well as John Doe employee for Transcor America, Inc. The John Doe employee was identified as defendant Zierdt in the plaintiff's Third Amended Complaint which was duly filed on December 23, 2004. (Court Doc.

12

No. 30). Thus, the purpose of a statute of limitations, to give defendants notice of the claims brought against them, was met.

Based on the above, the plaintiff respectfullys request that the Court deny the defendants' Motion for Summary Judgment as to the defendant Transcor America, Inc. employees, Zierdt, Reid, Napier, Ryan, Bendelow and Tavarez.


**C.    THE PLAINTIFF TOOK ALL STEPS NECESSARY TO PROPERLY SERVE DEFENDANTS ZIERDT, TAVAREZ, REID, NAPIER, BENDELOW AND RYAN.**

The defendants have once again renewed their argument that this Court does not have personal jurisdiction over them because they have not been served with the Summons and Amended Complaint.

Once again, the plaintiff must argue that the defendants have long since waived improper service as a defense in this matter.

The filing of a general appearance by an attorney duly authorized constituted waiver of any defect in service and gave the court jurisdiction of the person of the defendant. Landy v. Cohen, 12 Conn. Supp. 201 (1943). See Hammond v. Parker, 129 A.2d 793, 20 Conn. Supp 193 (1957). In this case, a general appearance was filed for Defendants Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan. (Court Docs. #47, 48, 49, 50, 52, 58 and 64). This action constitutes both procedural and actual waiver of any defect claimed in the service. Id.

13

Federal Rules of Civil Procedure Rule 4(e) (1) states that service upon an individual is to be made pursuant to the law of the state in which the district court is located. In this case, the law of Connecticut service applies. Since a general appearance constitutes waiver in Connecticut, See Landy and Hammond, supra, the defendants through their duly authorized attorney, waived any defect by the filing of his appearance on behalf of Defendants Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan. "It is fundamental that jurisdiction over a person can be obtained by waiver." Pitchell v. City of Hartford, 247 Conn. 422, 428 (1999), citing United States Trust Co. v. Bohart, 197 Conn. 34, 39, 495 A.2d 1034 (1985) ("unlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver").

Furthermore, on October 31, 2002, the plaintiff filed a Motion to Proceed In Forma Pauperis. (Court Doc. #1). On or about October 20, 2004, the Court ordered the plaintiff to complete a USM-285 form for all defendants, with the exception of Defendant Zierdt, and to return same, along with a completed notice of lawsuit and waiver of service form, as well as a copy of his Amended Complaint, for each defendant, within twenty (20) days of the date of the order. (Fitzsimmons, J.) (Court Doc. # 25).

The plaintiff then asked for an additional twenty (20) days within which to comply with the Court's October 20, 2004 order (Court Doc. # 26), which was granted on December 8, 2004. (Court Doc. #28).

The plaintiff sought leave to amend his complaint, to add Defendant Zierdt on or about

14

December 23, 2004 (Court Doc. #30), which was granted by the Court on or about January 4,

2005.  (Court Doc. #31).

When returning the USM-285 forms to the Court, with the notice and waiver forms, the

plaintiff included a set of forms for Defendant Zierdt, and said forms were forwarded to the U.S.

Marshal for service by the Court on or about January 26, 2005.

At this time, the plaintiff has complied with all Court Orders relative to service of process for

all defendants, pursuant to his original Motion to Proceed In Forma Pauperis.

Since Defendant Zierdt's previous Motion to Dismiss, arguing insufficiency of service, the

plaintiff has sought to serve the defendants through the U.S. Marshal, but has been unsuccessful

in ascertaining said defendants' whereabouts.

The plaintiff has unsuccessfully attempted to retrieve the information, with all of the

assistance that can be provided to him through Inmates' Legal Assistance Program, as well as

through discovery requests.

Moreover, the defendants' have answered the plaintiff's discovery requests, as well as filed

discovery requests with which the plaintiff has complied, including conducting a deposition of

the plaintiff.  In addition, two (2) of the defendants, Zierdt and Ryan, have sworn to affidavits

that have been offered as exhibits in this matter (Court Doc. Nos. 56 and 68).

As the purpose of serving process on a defendant is to put such defendant on notice that he is

being sued and to make the defendant aware of the claims that a plaintiff has made against him,

15

the defendants cannot in good faith argue that they are not aware of the plaintiff's claims in this case.

Based on the above, the defendants have waived any defect in service of process, and therefore, the defedants' Zierdt, Tavarez, Reid, Napier, Bendelow and Ryan, Motion for Summary Judgment for lack of personal jurisdiction should be denied.

### D.     THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ZIERDT.

In their Motion for Summary Judgment, the defendants, once again, argue that the Court does not have personal jurisdiction over defendant Zierdt because he was not present in the State of Connecticut at the time of the incident described in the plaintiff's Complaint. Moreover, the defendants argue that defendant Zierdt does not have the minimum contacts within the State to provoke Connecticut's long-arm statute, C.G.S. §52-59b.

Pursuant to C.G.S. §52-59b(a)(1), the Court has jurisdiction over any individual who "[t]ransacts business within the state."

Within his complaint, the plaintiff alleged that defendants, John Zierdt, Jr., Scott Reed, Anthony Napier, B. D. Bendelow, J. Tavariez, D. Ryan, II, and Plute were employees of Transcor America, Inc., and that said defendants were hired by the Connecticut Department of Correction to transfer Connecticut state prisoners to Virginia. (Plaintiff's Complaint, ¶5). Moreover, the

16

plaintiff stated in his complaint that he was placed in full transportation restraints by employees of Transcor America, Inc., including Defendants B. D. Bendelow, Anthony Napier, and Plute for an administrative out-of-state transfer to Wallens Ridge State Prison in Big Stone Gap, Virginia, prior to the incidents of physical abuse by the defendants. (Plaintiff's Complaint, ¶10).

Furthermore, in their Memorandum, the defendants acknowledge that defendant Zierdt was the president of TransCor America, Inc. at the time of the incident. (Defendants' Memorandum, page 6).

Thus, Defendant Zierdt falls within C.G.S. §52-59b, in that he was conducting business within the State of Connecticut on November 8, 1999, and therefore, this Court has personal jurisdiction over Defendant Zierdt.

Defendants also argue that the plaintiff cannot maintain a cause of action against defendant Zierdt as a supervisory official because he was not even aware that the incident had taken place.

However, the plaintiff wrote to defendants when he received part of his property which contained writing materials. (See Plaintiff's Third Amended Complaint, ¶40, Affidavit of Shawn Robinson, ¶7, Exhibit 1, Deposition of Shawn Robinson, p. 50, l. 11-21, p. 51, l. 2-5, Exhibit 2). The defendants did not respond to the plaintiff's correspondence.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Rizzo v. Goode, 423 U.S. 362, 370-371, 46

17

L.Ed.2d 561, 96 S.Ct. 598 (1976)).  In determining the personal involvement of a supervisor, a court must look at five separate aspects of supervisor liability: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Williams 781 F.2d at 323; see, e.g. Wright v. McMann, 460 F.2d 126, 135 (2d Cir. 1972) (warden responsible for the conditions occurring in disciplinary units).  Supervisor liability prevents an official in a supervisory position from avoiding responsibility simply because a subordinate directly caused the constitutional violations.

The doctrine of supervisor liability requires officials to monitor the actions of subordinates and promulgate policies that are consistent with the constitutional rights of the inmates.  Colon, 58 F.3d at 873.  Supervisors that enforce or allow the continuation of policies that result in constitutional violations are personally involved within the meaning of §1983.  McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (prison superintendents were personally involved based on allegations that they were responsible for enforcing and maintaining an unconstitutional

18

policy).

Defendants have the obligation to monitor subordinates, investigate potential problems, implement policies, and ensure that violations of constitutional rights do not result from their personal involvement.

In this case, defendant Zierdt failed to properly supervise his subordinates, defendants Ryan, Napier, Bendelow, Tavarez and Reid and/or did not promulgate policies which would have required the defendant employees to intervene in the November 8, 1999 incident, seek help or treatment for the plaintiff during and after the November 8, 1999 incident or report the November 8, 1999 incident to the proper authorities, thereby depriving the plaintiff of his constitutional rights. Moreover, after being informed of the November 8, 1999 incident and his subordinates' participation in depriving the plaintiff of his constitutional rights, through personal correspondence by the plaintiff, defendant Zierdt not only did not correct the situation, the defendant did not even acknowledge the correspondence.

Based on the above, the plaintiff respectfully requests that the Court deny defendants' Motion for Summary Judgment as to defendant Zierdt for lack of personal involvement.


**E.     PLAINTIFF EXHAUSTED HIS ADMINISTRATIVE REMEDIES PURSUANT TO THE PRISON LITIGATION REFORM ACT.**

Finally, the defendants have requested the Court allow them to adopt the arguments set for in

19

the Defendants' Motion for Summary Judgment filed by the Connecticut DOC employee

defendants on January 10, 2007.

The plaintiff respectfully refers the Court to his Memorandum of Law in Opposition to

Defendants' Motion for Summary Judgment which was filed in response to the Connecticut

DOC employee defendants' Motion.


**III. CONCLUSION**

For the foregoing reasons, the plaintiff respectfully requests that the Court deny defendants',

Zierdt, Reid, Napier, Ryan, Bendelow and Tavarez, Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,


By _____

Shawn Robinson, PRO SE
#430720
P.O. Box 861
Trenton, NJ 08625-0861


_____
On the Memorandum
Jessica J. York, Esq.
Inmate's Legal Assistance Program
78 Oak Street
Hartford, CT 06106
Fed. Bar. No.:CT 20666

20

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following counsel on this _____ day of July, 2007:

Robert Rhodes, Esq.
Halloran and Sage, LLP
315 Post Road West
Westport, CT 06880

Ann E. Lynch, Esq.
Attorney General's Office
110 Sherman Street
Hartford, CT 06105

Shawn Robinson, PRO SE

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July 2007 that a copy of the foregoing (Plaintiff's Memorandum of Law) will be  mailed to all counsel on record, via my unit staff to the following:

Ms. Ann E. Lynch, Esq.
Attorney General Office
110 Sherman Street
Hartford, CT  06105

Mr. Robert A Rhodes, Esq.
Halloran & Sage,  LLP
315 Post Road West
Westport, CT  06880

MR. SHAWN L. ROBINSON
The Plaintiff  Pro Se