UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2007 AUG -8 P 12: 46

U.S. DISTRICT COURT
HEPORT. CONN.

SHAWN L. ROBINSON,                          )
                                            )
            Plaintiff,                      )
                                            )
    -VS-                                     )
                                            )
MICHAEL L. HOLLAND, ET AL.,                 )
                                            )
            Defendants.                      )

CIVIL ACTION

NO. 3:02-CV-1943(CFD)(TPS)

30 JULY 2007

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

## I. INTRODUCTION

Plaintiff Shawn L. Robinson filed this civil action on October 31, 2002, pursuant to 42 U.S.C. 1983 against Michael L. Holland and others who acting under color of state law, ordinance, regulations, charter, custom or usage, have violated plaintiff's civil and due process rights by intentionally and unlawfully subjecting plaintiff to mental and physical torture and cruel and unusual punishment, including the deliberate denial and indifference to prompt adequate medical treatment, as well as the unlawful placement into punitive and administrative segregation. These actions further violated the Eight and Fourteenth Amendments to the United States Constitution.

The defendants have filed a motion for summary judgment, as to challenge these claims being administratively exhausted under the Prison Litigation Reform Act, but at no time do the defendants ever address or challenge the validity of plaintiff's main allegation of being brutally attacked and beaten without any provocation, as well

as the denial of medical treatment, and the unlawful placement into puntive and administrative segregation arbitrarily.

Plaintiff opposes their motion on the grounds that there are many material issues of fact in dispute. The defendants have failed to establish that there are no material disputed facts to be tried. Plaintiff submits a sworn affidavit of declaration in opposition to defendants' motion for summary judgment, along with this memorandum of law and exhibits, which includes a Statement of Disputed Facts.

## II. **STATEMENT OF FACTS**

On November 8, 1999, the Connecticut Department of Correction transferred plaintiff out-of-state to Wallens Ridge State Prison in Big Stone Gap, Virginia, along with two (2) bus loads of other Conn state prisoners. But before plaintiff had the opportunity to get on the prison transportation bus from TransCor America, the defendants at Northern Correctional Institution in Somers, Connecticut without any provocation brutally beat and tortured the plaintiff, after the transportation defendants from TransCor America had stripped search him and secured him in full transportation restraints.

Plaintiff was totally defenseless, and could not get anyone to intervene or get him any medical treatment for his injuries.

Prior to November 8, 1999, plaintiff was being unjustly housed at NCI - Somers on administrative segregation.

Northern Correctional Institution (NCI) was a supermax prison, and was mainly being used as one big restrictive housing unit, that only housed level five (5) male prisoners.

This included state prisoners sentenced to death; prisoners on administrative segregation and chronic discipline or any other

2

close custody status.

Plaintiff had been a level four (4) Connecticut state prisoner for over ten (10) years, until he was transferred back to the State of Connecticut Department of Correction in 1997.

Once plaintiff was transferred back into the Conn Department of Correction; he was immediately placed in punitive segregation with no kind of disciplinary charge or hearing.

There were never any new or recent allegation or charge to even initiate or justify the plaintiff's placement on administrative segregation, pursuant to the Department of Correction's Admin. Dir. No. 9.2, Inmate Classification and the classification manual.

But plaintiff's security risk level was arbitrarily increased to a Level Five, and he was placed on administrative segregation at Northern CI for something that occurred seven years before Northern was ever built or this administrative segregation policy and program being implemented and promulgated by the Department of Correction.

Furthermore, plaintiff had already been penalized for this same incident in 1990 when he was falsely accused of participating in an alleged riot and assaulting DOC Staff David Serkowsky.

Plaintiff was only transferred to Northern for revenge, as well as for unjust disciplinary and punitive measures.

After plaintiff was transferred to Northern, the Department of Correction allowed DOC Staff David Serkowsky to start working there at Northern CI, and matters just got worse for plaintiff.

All of the prison guards and staff working there at Northern CI were made fully aware of plaintiff's criminal conviction and forty-five (45) years sentence for allegedly assaulting David Serkowsky.

## III. LEGAL ARGUMENT

### A. THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR THE DEFENDANTS IN THIS HERE ACTION

Summary judgment is to be granted only if the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A "material" fact is one that "might affect the outcome of the suit under the governing law." Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Further "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." Id. In considering whether that burden has been met, "all ambiguities must be resolved, and all inferences drawn in favor of the party against whom summary is sought." Gallo v. Prudential Residential Services, 22 F.3d 1219, 1223 (2d Cir. 1994).

"Summary judgment is ordinarily inappropriate where intent and state of mind are at issue." Montana v. First Federal Savings and Loan of Rochester, 869 F.2d 100, 103 (2d Cir. 1989):

> A trial court must be cautious about granting summary judgment to an employer where, as here, its intent is in issue....Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate records. Affidavits and depositions must be carefully scrutinized for circumstantial proof, which if believed, would show discrimination. Finally, the trial court's task at the summary judgment state of the litigation is carefully limited to discovering whether there are any genuine issues of material fact to be tried, not to decide them.

Gallo., supra at 1224. (emphasis added)

Accordingly, this Court has held, that "the burden falls on the moving party to establish that no relevant facts are in dispute."

4

Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party (citation omitted.) For not only must there be no genuine issue as to the evidentiary facts, but also there cannot be any controversy regarding the inferences to be drawn from them (citations omitted). Diamontopulos v. Brookside Corp., 683 F.Supp. 322, 325 (D.Conn 1988) citing Donohue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 57-58 (2nd Cir. 1987).

## B. DEFENDANTS' PREVIOUS UNSUCCESSFUL 2005 RULE 12(B)(6) MOTION TO DISMISS PURSUANT TO SUPREME COURT LAW ESTABLISHED BY SCHEURER v. RHODES

On April 6, 2005, via counsel, various named defendants in this action filed an unsuccessful motion to dismiss on a host of grounds.

The first of those maintained plaintiff failed to sufficiently plead causes which were maintainable under the provisions of Federal Rule of Civil Procedure 12(b)(6), and the controlling interpretation of it by the Supreme Court in Scheurer v Rhodes, 416 U.S. 232 (1974) and Hishon v. King & Spaulding, 467 U.S. 69 (1984). Also relied on was the binding precedent handed down by the Second Circuit in Paulemon v. Tobin, 30 F.3d 307 (2d Cir. 1994). This was accomplished based on the reasoning mere general conclusory, and vague unprovable allegations are insufficient to sustain an action. Scheurer, at 236. Similarly Paulemon was relied upon since it deemed legal any written instrument attached to a complaint, as an exhibit, statements and/or documents incorporated into it by reference be considered whenever confronted with a 12(b)(6) motion. Id., at 308-309.

What was, and continues to remain particularly unfathomable, is why these defendants placed primary reliance on Scheurer decided a

5

decade prior to <u>Hishon</u>, despite the fact  that  they were supposedly
aware their prior motion could succeed under <u>Hishon</u>,  **only if**, under
any set of facts plaintiff could prove consistent with his pleadings
it was "clear" no relief could be granted. <u>Id</u> at 73 (Emphasis Added)
[Defs.' Memorand., Dism. § II.A, at 2 to 3].   If anything, this is
precisely  why  that motion appear to be brought only or purposes of
delay, without any foundation,  and hence ones for  which  sanctions
ought to be imposed as urged within **III.(h)**  of  the  legal argument
section of this brief.

### C. <u>**PLAINTIFF EXHAUSTED ALL ADMINISTRATIVE REMEDIES AVAILABLE TO HIM.**</u>

First, defendants argue that plaintiff didn't fully exhaust his
administrative remedies because he did not file a grievance relative
to the November 8, 1999 incident within thirty, days as set forth in
Administrative Directive 9.6, nor did he file Level 2 or 3 grievance
when his grievance was denied in part.

"The affirmative defense of exhaustion is subject to estoppel."
Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004)

The Second Circuit has stated that "while the PLRA's exhaustion
requirement is mandatory, ..., certain caveats apply.  These caveats
fall into three categories: when (1) administrative remedies are not
available  to  the  prisoner; (2)  defendants have either waived the
defense  of  failure  to exhaust or acted in such a way  as to estop
them from raising this defense; or (3) special circumstances such as
a reasonable misunderstanding of the  grievance  procedures  justify
the  prisoner's  failure to comply with the exhaustion requirement."
Ruggiero  v.  County of Orange,  467 F.3d 170, 175  (2nd Cir. 2007),
citing Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004).

"A prisoner's failure to exhaust also can be excused if the defendants' actions estop them from presenting the failure to exhaust as a defense, or their actions render grievance procedures de facto unavailable. Thus, we have recognized that if the defendants' own actions prevent a priosner from pursuing administrative remedies, the prisoner's failure to avail himself of those remedies cannot bar his access to the courts." (internal citations omitted) Ruggiero 467 F.3d at 178.

"What constitutes justification in the PLRA context must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way. The effect of such justification is that, though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding." Brownell v. Krom, 446 F3d 305, 312 (2d Cir 2006).

"PLRA's exhaustion requirement is not so rigid as to permit the barring of all suits brought after administrative remedies are no longer available, regardless of the circumstances, and simply because plaintiff failed to follow prison grievance procedures to the letter. Special circumstance may exist that amount to a justification for not complying with administrative procedural requirements." Giano v Goord 380 F.3d 670, 677 (2d Cir. 2004), Berry v. Kerik, 366 F.3d 85 (2004).

In this matter, the plaintiff was viciously attacked and beaten by a gang of prison guards without any provocation prior to him being transferred, not only to another correctional facility but to another correctional facility in a totally different state. Upon arriving at

7

Wallens Ridge State Prison in Big Stone Gap, Virginia, the plaintiff was deprived of his property, including writing materials, for quite a period of time. Upon receipt of some of his personal property, the plaintiff begin to write to various law enforcement  and  officials, including the Commissioner for the Department of Correction, as well as the Director for TransCor America, Inc.

The delay in plaintiff filing his administrative remedies, is a direct result of the defendants failing to make the prison grievance forms readily available to the plaintiff. Therefore the delay cannot and should not be attributed to the plaintiff, because DOC officials deprived him access to materials that he needed to file a grievance.

Moreover, Major Milling denied the plaintiff's January 17, 2000 grievance No. 2 VA-00-10, but did not include an appeal form and the directions for appealing to Level 2, as mandate in Admin. Directive 9.6, Inmate Grievances, sec. 15 (Level 1 Review) See Exhibits A.& B. (Affidavit of Lynn Milling)

In this case the plaintiff's failure to file a timely grievance and to appeal same  is  the direct result of the defendants' actions in refusing to  make  the forms readily available to those prisoners who  were  transferred to Wallens Ridge State Prison, as well as the understanding of the grievance system itself. The defendants did not have grievance  forms  available to the inmates when they arrived at Wallens Ridge State Prison, and then when the  plaintiff was finally able  to  obtain a form and file it, the defendants compounded their failure by not providing the plaintiff with the appropriate  Level 2 grievance form when denying his Level 1 grievance.

Based on the above, the defendants' actions in failing to timely

8

provide the proper forms for the plaintiff to utilize the Prisoner's Grievance process should estop the  defendants from now claiming the plaintiff did not exhaust the process.

Also, the defendants' Exhibit A. (Administrative Directive 9.6) further contradict the exhaustion argument, because section 6(B)(6), "Grievable Matters" states,"The following matters are not grievable: Health services diagnosis or treatment." Thus, plaintiff is actually exempt from the exhaustion requirements that relates to being denied medical health services and treatment.

Plaintiff thinks the defendants are trying to mislead the Court with this grievance system, because incidents of assault are usually investigated by their security division, and not at the lower level. See Exhibit A, Admin. Dir. 9.6(13), Appropriate Review: "A grievance about a matter that is beyond the authority of lower level(s) of review may be sent by the lower level reviewer directly to the appropriate level of review.

Plaintiff has personally experienced this procedure in the past about the DOC security division conducting an investigation, when he was assaulted by Connecticut prison guards. See Exhibit 5.

After thoroughly perusing and scrutinizing the defendants' main exhibit about the procedures in Admin Dir 9.6, 'Prisoner Grievances' plaintiff discovered a lot of inconsistencies and ambiguities that might exempt him from the Prison Litigation Reform Act's exhaustion requirement in this here civil action.

(1) Plaintiff was immediately transferred out of state, after he was viciously assaulted and denied medical treatment, thus no longer being a person in the custody of the Conn Department of Correction.

9

(2) This Administrative Directive 9.6, Prisoner Grievances does not say anything about grievance procedures for Connecticut state prisoners who have been transferred out of state.

(3) According to Amin Dir. 9.6(8)(F),"Adminstrative Provisions" it clearly states, "Procedures to assure that no employee or inmate participate in the resolution of a grievance in which the employee or inmate is allegedly involved." And that would exclude Frederick J Levesque and Major Lynn Milling from participating in the resolution or making any disposition into plaintiff's grievances, because sworn affidavits which they submitted in the behalf of the defendants, now actually shows their direct involvement as being the individuals who were responsible for transferring plaintiff, after he was brutally assaulted and denied medical treatment, as well as arbitrarily increasing plaintiff's security risk level and unlawfully placing him on administrative segregation. Also, Frederick Levesque and Lynn Milling might have even been present at Northern CI at the time, and was aware of the defendants assaulting plaintiff. If plaintiff comes across evidence which implicate Frederick J. Levesque and Major Lynn Milling of being present when the defendants were assaulting him and did nothing to try stopping it, or had knowledge that the defendants were planning to assault him, before they transferred him, then they could be potential defendants as well.

(4) Admin Dir. 9.6, Sec. 4(C): "Notice" reads, "An inmate shall receive oral instruction about the Inmate Grievance Procedure filing of a grievance and obtaining grievance forms. This instruction shall take place as part of the orientation curriculum, not later than two (2) weeks after admission." As shown in the sworn affidavit of Major

10

Lynn Milling, plaintiff never received any kind of oral instructions or orientation about the Prisoner Grievance Procedure after arriving at Wallens Ridge State Prison. See Exhibit B.

Therefore, plaintiff respectfully requests that this Honorable Court deny the defendants' Motion for Summary Judgment.

**D. WILLIAMS v. OVERTON DOES NOT REQUIRE THAT EVERY DEFENDANT BE NAMED IN ORDER TO EXHAUST ONE'S ADMINISTRATIVE REMEDIES.**

The defendants next argue that because the plaintiff did not name every defendant in his grievance he filed on January 17, 2000, that he did not exhaust his administrative remedies.

In rendering their decision, the United States Supreme Court stated that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance." Jones v. Bock 127 S.Ct. 910, 923 (2007). Because the plaintiff is not required to name every defendant in a grievance in order to exhaust his/her administrative remedies, the defendants' Motion for Summary Judgment should be denied.

**E. DEFENDANTS LAJOIE, ZACHAREWICZ AND KNAPP ARE PERSONALLY INVOLVED IN THE CONTEXT OF A §1983 CLAIM BECAUSE THEIR CLAIM BECAUSE THEIR ACTIONS AS SUPERVISORS CAUSED THE VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

Defendants next argue that summary judgment should be entered in favor of Defendants Lajoie, Zacharewics and Knapp because none of them were personally involved in the November 8, 1999 incident.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and Laws." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)(quoting Rizzo v. Goode, 423 US 362, 370-371,

46 L.Ed.2d 561, 96 S.Ct. 598 (1976)). In determining the personal involvement of a supervisor, a court must look at five (5) separate aspects of supervisor liability: (1) defendant directly participated in the alleged constitutional violation, (2) defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy of custom under which the unconstitutional practices had occurred, or allowed the continuance of such a policy or custom,(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of prisoners by failing to act on information indicating that unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865 873 (2d Cir. 1995); Wiliams 781 F.2d at 323; see, eg Wright v McMann 460 F2d 126, 135 (2d Cir 1972)(warden responsible for the conditions occurring disciplinary units). Supervisor liability does not prevent an official in a supervisory position from avoiding responsibility, simply because a subordinate causes the constitutional violations.

The doctrine of supervisor liability requires officials to make sure that they monitor the actions of subordinates and promulgate policies that are consistent with the constitutional rights of the prisoners. Colon, 58 F.3d at 873. Supervisors that enforce or allow the continuation of polices that result in constitutional violations are personally involved within the meaning of §1983.McKenna v Wright 386 F3d 432, 437 (2d Cr 2004)(prison superintendents were personally involved based on allegations that they were responsible for enforcing and maintaining an unconstitutional policy.)

Defendants have an obligation to monitor subordinates, as well

12

as investigate potential problems, implement polices, and ensure that violations constitutional rights do not result from their personal involvement.

In this case, Defendants Lajoie, Zacharewicz and Knapp failed to properly supervise their subordinates, in which other defendants and DOC employees and/or did not promulgate policies which would have required the defendants and DOC employees alike to intervene in the November 8, 1999 incident, seek help or treatment for plaintiff during and after the assault, or report the incident to the proper authorities, thereby depriving the plaintiff of his constitutional rights.

Plaintiff's third amended complaint sufficiently pleads liability as to defendants Lajoie, Zacharewicz and Knapp based on on personal involvement Therein plaintiff maintained that defendants by uniting in an act which constituted a wrong to him and performing it under circumstances, that incurred a joint liability for the acts of each and all of the joint participants. [Third Am. Compl., Count I, ¶ 53]. It was further pleaded that each of the defendants both separately and in concert deprived him of his rights to be free from cruel and unusual punishment, freedom of speech, freedom to petition for redress of grievance, free from conspiracy to deprive him of his civil rights and due process of law as secured by the First, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. [Third Am. Compl., Count I, ¶ 54].

He further alleged supplemental jurisdiction of the court being invoked pursuant to § 1367 provisions of Title 28 as to the claims of Count II arising under both the statutory and common law of the

State of Connecticut. [Third Am. Compl., Count II, ¶ 55]. So too, monetary damage liability was premised as secured to him by the State of Connecticut for the assistance, complicity and conspiracy subjecting him to assault and battery, false imprisonment and intentional infliction of emotional distress. [Third Am. Compl., Count II, ¶ 56]. He incorporated paragraphs three through fifty-four in support of such theories within Count II[Third Am Compl Count II, ¶57] and paragraphs ten through forty-one in support of the theories propounded within Count I. [Third Am. Compl., Count II, ¶ 58].

Plaintiff further urged the torts of intentional infliction of emotional distress, negligence in performance of duties, and illegal confinement to and in their punitive and administrative segregation. [Third Am. Compl., Count II, ¶¶ 59, 60, and 61].

First, plaintiff's claims exceed the minimal Supreme Court tests sufficient to resist summary judgment Plaintiff's pleading certainly surpasses the minimal "causes to be subjected," test of Rizzo at 370 and 371. So too, the personal involvement requirment of Graham is is exceeded in this matter. Likewise, plaintiff's allegations dispense with the general doctrine of respondent superior held insufficient to plead a colorable claim for relief pursuant to the section in Monell, as they make such claims with specificity.

Here, plaintiff does not suggest that the named officials are rendered liable solely by virtue of a high position in prison hierarchy; thus distinguishing it from Second Circuit law initially pronounced in Colon.(Emphasis Added) Lastly, plaintiff's allegations brought against defendants Lajoie, Zacharewicz, and Knapp in no way, shape or form resemble those which are attempted to be maintained on

14

the general doctrine of <u>respondent</u> <u>superior</u>, and accordingly legally insufficient pursuant to <u>Sealey</u>.

For all of these reasons, defendants' urgings on this ground are woefully off base and must rightfully be ignored as unsound pursuant to controlling precedent.

Based on the above, plaintiff respectfully requests that this Honorable Court deny the defendants' Motion for Summary Judgment as to Defendants Lajoie, Zacharewicz and Knapp for lack of personal involvement.

## F. PLAINTIFFS CONNECTICUT STATE LAW CLAIMS.

Plaintiff's supplemental state claims have not been adjudicated on the merits, therefore, they are within this Court's jurisdiction, pursuant to Federal Rules of Civil Procedure, Rule 18. Plaintiff's factual allegations for his state law claims are sufficiently entwined with his federal claims that for reasons of judicial economy alone they should be retained. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966).

## G. VIABILITY OF SUSTAINING COMMON LAW ACTION FOR UNLAWFUL SEGREGATION UNDER CONNECTICUT SUPREME COURT PRECEDENT.

<u>Felix v. Hall-Brooke Sanitarium</u>, 140 Conn. 496, 101 A.2d 500 (Conn. 1953); and <u>Outlaw v. City of Meriden</u>, 43 Conn.App. 387 (1996) are controlling on this topic.

Long ago, the State Supreme Court noted that at common law **False Imprisonment** was a category of intentional tort to remedy trespass. It was later literally defined generally, as the unlawful restraint by one person of the physical liberty of another. <u>McGann</u>

v. Allen, 105 Conn. 177, 188, 134 A. 810 (Conn. 1926); and Felix, at
499. While in Outlaw, at 392 the court did hold that if a plaintiff
was arrested on a facially valid warrant no cause of action could be
maintained as to false imprisonment.

Clearly, counsel for the defendants have no doubt missed
the entire mark concerning this issue. Specifically, plaintiff
acknowledge that he is barred from even attempting to invalidate his
criminal convictions via civil proceedings, but this is simply not
the issue raised by plaintiff.

The false imprisonment that plaintiff alludes to in his civil
complaint is his unlawful placement and confinement into punitive
and administrative segregation, without being charged with violating
any prohibited act(s).

Plaintiff takes no quarrel with this controlling law, and the
rulings therein upon which defendants rely. Plaintiff's focus is not
on arrest or the validity of a warrant permitting them to effectuate
such. Rather, it is only being focused upon the restraint of liberty
accomplished upon his person unlawfully within the prison.

Before a prisoner can be removed from prison general population
and placed into punitive segregation in a Restrictive Housing Unit
he must be provided various safeguards to ensure that his placement
there is not arbitrary, unjust, or simply a means to shut the inmate
down from becoming a perceived problem, although the prisoner hasn't
broken any rules.

This type of conduct was abandoned years ago. Wolf v. McDonnell
94 S.Ct. 2963 (1974). Just some of the safeguards that plaintiff is
entitled to before being placed into punitive and administrative

segregation is notification, a hearing, the right to call/confront witnesses, and an impartial hearing officer/tribunal.

Although it seems that the defendants are merely discombobulated from plaintiff using the prison parlance and vernacular term "false imprisonment" it does not take away from the fact that they violated plaintiff's right to due process.

The decisional law does not specifically exempt such acts from being actionable by this remedy. Since no existent law permits defendants to prevail on this rationale, the Court should deny their Motion For Summary Judgment.

## H. PREMATURITY OF PRECLUSION OF § 4-165 NEGLIGENCE GROUNDS PREDICATED ON STATE STATUTORY IMMUNITY RATIONALE AND THE HOLDING IN MANIFOLD v. RAGAGLIA RENDERED LAST YEAR.

Finally, the defendants urge a misplaced reliance on Conn. Gen. Statute §4-165 as insulating them from actions from negligence since they were state employees acting within the scope of their duties. The statute in question provides official immunity for acts as to personal liability unless the damages or injury inflicted is not wanton, reckless, or malicious and caused in the discharge of his duties or within the scope of his employment.

The acts complained of herein, as to each of the defendants, as pleaded by plaintiff, certainly were within the purview of not being immunized as they were committed in acts which can easily be classified as wanton, reckless and committed with malice. Further, they were not caused in the discharge of duties or within the scope of employment as counsel can not point to regulations which obligate prison officials to dutifully assault prisoners, unlawfully cause

17

them to be confined in lockup units, or deny them medical treatment. To even urge such a defense is an insult to the integrity of the statute involved and its purpose.

The type of act actionable which falls outside protection of the statute was alluded to in Manifold v. Ragaglia, 94 Conn.App. 103 (2006) Therein the court held the acts in question must exceed those involved in the proof of mere negligent conduct, as well as grossly negligent conduct. To establish such a cause of action what was required was that a plaintiff prove the existence of a state of consciousness indicative of a reckless disregard for the just rights or the safety of another and the existence of a state of consciousness with reference to the consciousness of acts. Id., at 115-116.

Brutal assaults as detailed within the pleadings filed here certainly fulfills this standard It is an insult to the intelligence of this court to maintain such a defense. Accordingly the defendants arguments on this issue are patently frivolous, as are the others which preceded it. Thus, this here Honorable Court should deny this argument as well.

## I. § 1985/1988 CLAIMS ANALYSIS PURSUANT TO SUPREME COURT LAW OF CONLEY, MOOR, NEITZKE AND KAY, THIS DISTRICT'S TEST UNDER PRESNICK

Herein, authority for defendants' rationale is alleged to be present in Conley v Gibson, 355 U.S. 41 (1957) Moor v Alameda County 411 U.S. 693, rehr'g. den. 412 U.S. 963 (1973), Neitzke v. Williams, 490 U.S. 319 (1989); and Kay v. Ehrler, 499 U.S. 432 (1991).

The Second Circuit also addressed this issue in Julian v N.Y.C. Transit Auth., 52 F.3d 312 (2nd Cir. 1995); and Thomas v. Roach, 165 F.3d 137 (2nd Cir 1999). Beyond that District precedent of Vitale v.

Nuzzo, 674 F.Supp. 402 (D. Conn. 1986); and Presnick v. Santoro, 832 F.Supp. 521, 531 (D. Conn. 1993).

Plaintiff maintains the urgings of defendants fail on this point as well under the Supreme Court doctrine announced in Conley, Moor, Neitzke and Kay. For long ago, it was established a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent within the stated allegations. Conley, at 45-46. After Conley, it was established in Moor, that § 1988 does not provide an independent cause of action. Id. at 702-706. Thus, there must be a substantive actual deprivation of civil rights, not merely a conspiracy to act in such a fashion absent the actual culmination of doing so. Akin, to this is that while conspiracy to commit murder may be a crime which can be prosecuted absent an actual murder or even attempt, this does not hold true as to civil liability incurred for a conspiracy to violate a person's civil rights. Therefore, if there was merely a conspiracy to violate plaintiff's civil rights and no actual acts which did so the conspiracy would not constitute a cognizable of action under Moor rationale.

It follows that defendants can not prevail based on Conley or Moor principles. Conley holds a complaint may not be dismissed if there is existent any provable allegations which could conceivably result in relief. Here, as indicated within III.(D), and as alleged with specificity within the third amended complaint existent are allegations therein which clearly exceed the Conley test. Further, herein, Moor is clearly inapplicable. Plaintiff does not, and has never alleged merely a conspiracy to act without any action, or

detrimental effect upon him.  He has consistently maintained serious physical injuries were inflicted, and detailed which defendant acted in what fashion. The mere  presence  of  them in close proximity and arrival  of  other  defendants  coupled with laughter,  and a quoted racial slur within the pleading from a defendant making reference to the fact the injuries inflicted were coming about as retaliation for an assault of a fellow guard certainly establish a minimal  pleading under § 1988 to prevent dismissal at this stage.

While defendants  cite  _Kay_ for the proposition that therein it was held  pro  se  litigants  are  not  entitled to attorneys' fees pursuant to § 1988, _Id._, at 435; plaintiff submits dismissal of this request  for  relief  at  this  juncture is premature, and serves no legitimate  goal.  In  fact,  in the long run, such  action may only require an unnecessary filing that this court could prevent by denial of this argument proffered by defendants at this time.

This is because, the presence of a claim for attorneys' fees at this  time  has no effect.  Under _Kay_, it would continue to have the same nullity  if  plaintiff  should  proceed to trial unrepresented. First,  he  must  prevail  on  substantive  allegations prior to any recovery. If he does so while representing himself there would exist the preclusion of  an  award of attorneys' fees put in place by _Kay_. However,  should  counsel  represent  him  at  trial, and this court accepts as  valid  the  urgings  of defendants relative to _Kay_, this would result in a duplicative filing requesting those  fees  awarded and consume precious judicial resources. Obviously, the most prudent course at this time is to allow this prayer for relief to remain.

Defendants  also  point  to  the four allegations to insulate a

conspiracy from dismissal under the Second Circuit's holdings in Julian and Thomas, infra., as to § 1985(3). In 1995, the circuit announced its affirming of a district court ruling that held to combat dismissal there is a requirement to claim: (1) a conspiracy; (2) the conspiracy was had to deprive a person or class thereof, of equal protection of the laws as to privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) plaintiff is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. See Julian, 857 F.Supp. 242, 252 (E.D.N.Y. 1994), aff'd. 52 F.3d 312 (2nd Cir. 1995).

Apparently, some four years later the circuit imposed a more stringent criteria for plaintiffs in this predicament to meet. This consists of the conspiracy being motivated by some racial or perhaps otherwise class based, invidious animus. See Thomas, at 146-147.

Taking both the Julian and Thomas criterion in turn, it is noteworthy initially that in reality the more stringent Thomas criteria was inclusive of the (4) components of Julian supplementing it with a fifth aspect which rendered a claim salvageable from dismissal in a § 1985 (3) scenario based on two alternative criteria being existent.

Thus, under Julian, plaintiff has maintained: (1) a conspiracy; (2) that it was expressly had for the purposes of depriving him of equal protection of the laws of equal privileges and immunities under the laws, and more specifically to deprive him of the right to petition for redress of grievances, to be free from cruel and unusual punishment, and due process and equal protection of the law guaranteed by the First, Eighth and Fourteenth Amendments of the

Constitution in that he was assaulted, denied medical treatment for his injuries, deprived of his property consistent of religious and legal books, and corrective eyeglasses, and deprived of his liberty as a general population status Connecticut state prisoner absent a hearing; (3) the assault, denial of treatment, deprivation of property and liberty were acts in furtherance for the conspiracy and in retaliation for prior grievances; and (4) that he was deprived of his rights secured by the previously mentioned amendments of the constitution in addition to his right to be free from battery, unlawful segregation, and negligence of untrained state employees and negligently supervising state employees pursuant to Connecticut state statute.

As to the Thomas alternative criteria, he submits he thoroughly satisfies both prongs in that he alleges both an obvious racial discriminatory intent coupled with a specific invidious animus. Alluding to the use of the word, "nigger" by Defendant Holland and his stating that the assault being inflicted upon plaintiff was being accomplished for retaliation, and was being carried out on behalf of another individual whom Holland referred to as, "his white brother" totally fulfills and exceeds the Julian and Thomas requirements. [Third Amend. Compl. 12]. Quite obviously, his actions accompanied by others who voiced no protests, nor withdrew from the attack upon his uttering of it, is certainly evidence to sustain allegations of a conspiracy. Inference from those events in tandem, is beyond the minimal for a fact finder to find a colorable claim proven under § 1985(3).

Finally, these factual allegations support the racial and/or

class based animus required within this district pursuant to the interpretation of <u>Neitzke</u> had in <u>Smith v. Walsh</u>, 519 F.Supp. 853 (D. Conn. 1981), as to 28 U.S.C. § 1915(e)(2)(B)(ii). See Smith, at 856 citing <u>Neitzke</u>, at 325. Moreover, the conspiracy alleged exceeds the broad and expansive allegations of one deemed insufficient within this district in <u>Nuzzo</u> at 404. And for the reasons previously expressed as to <u>Kay</u>, the <u>Presnick</u> argument, (<u>Id</u>., at 31), is far too premature as premised on the same logic present there and in fact, may well be counterproductive under yet to transpire unknown future events.

For all of these reasons, defendants argument on this point, fails to hold water, and should be summarily disregarded.

### POINT IV.

**PLAINTIFF'S MOTION FOR SANCTIONS, AS WELL AS ASSESSMENT OF COSTS INCURRED TO SUBMIT A RESPONSIVE FILING SHOULD BE AWARDED IN THE INTERESTS OF JUSTICE AND TO DETER SUCH FUTURE BURDENSOME AND DILATORY FILINGS.**

### a. Criteria For Sanctions

The criteria for an imposition of sanctions is clear. <u>F.R.Civ.P</u> 11(c)(1)(A), upon a party's motion and designations of the subsections of <u>F.R.Civ.P.</u> 11(b)(1) through (4) which are violated in representations made to the court by the opposing party or counsel. As noted by a district court within the Second Circuit long ago, abuses in conducting litigation by submitting motions and pleadings in bad faith, and for purposes other than delay, including most specifically a motion for summary judgment are within the reach of this rule, and as combined with the other applicable rules.

23

See <u>Murchison v. Kirby</u>, 27 F.R.D. 14 (S.D.N.Y. 1961); F.R.Civ.P. 8(e)(2) and 56(g).

Abuses such as this as well as in discovery are actionable in this fashion. <u>National Hockey League v Metropolitan Hockey Club</u>, 427 U.S. 639 (1976). While a <u>pro se</u> party may be allowed some liberality in submission of pleadings, those submitted by members of the bar must generally adhere to stricter comport with the governing rules. <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

It was recognized sanctions are imposable for submissions for other than dilatory purposes in <u>Browning Debenture Holders Committee v. DASA Corp</u>, 560 F.2d 1078 (2nd Cir 1977); and <u>Nemeroff v. Abelson</u>, 620 F.2d 339 (2nd Cir. 1980). Even prior to this, the general rule governing this procedure F.R.Civ.P. 11(c) was addressed within <u>Heart Disease Research Corp v. General Motors, Corp</u>, 15 Fed.R.Serv.2d 1517 (S.D.N.Y. 1972) The holding therein, was the phraseology requirement of "good grounds to support" a filing was held applicable both to factual and legal elements. <u>Id.</u>, at 1519. Moreover, developments over the years are indicative of the courts' lack of tolerance for frivolity envisioning that a greater resort to this procedure will further the objectives as stated in <u>Nemeroff</u>. Even prior to this ruling, courts became cognizant of a duty to resort to such of their own accord. <u>North America Trading Corp. v. Zale Corp.</u>, 83 F.R.D. 293 (S.D.N.Y. 1979).

Monetary sanctions are applicable, pursuant to F.R.Civ.P. 11(c) (2)(A) in the form of a payment to the court. In this matter, there is a failure to abide by the requirements of F.R.Civ.P. 11(b)(1) in that it is being presented for harassment, forcing plaintiff to

devote time to a frivolous filing. The allegations are lacking in factual support pursuant to F.R.Civ.P. 11(b)(3). Finally, denials of plaintiff's contentions are unwarranted under F.R.Civ.P. 11(b)(4).

In addition to the prevailing case law in this area a veritable bevy of legal treatises endorse a more expanded resort to sanctions to eliminate these type of violations. See, i.e. 5 Wright & Miller, Federal Practice and Procedure: Civil §1334(1969) 6 Wright & Miller, Federal Practice and Procedure: Civil §1334(1971); Risinger, Honesty in Pleading and its Enforcement: Some Striking Problems with FRCP11, 61 Minn.L.Rev. 1 (1976); and Rodes, Ripple & Mooney, Sanctions Imposable For Violations of the Federal Rules of Civil Procedure 64-65, Federal Judicial Center (1981).

### b. Criteria For Costs

A similar criteria exists for imposition of costs, as not to be confused with awarding of attorneys' fees to which plaintiff would not be entitled since he remains representing himself at this time. Hall v. Cole, 412 US 1, 5 (1973); and Roadway Express, Inc v. Piper, 447 U.S. 752 1980). F.R.Civ.P. 11(c)(2) permits imposition of costs for precisely the same type of conduct. The provision allowing an award of attorneys' fees, "and other expenses incurred as a direct result of the violation" while precluding attorneys fees to a pro se party clearly does not extend the prohibition to postage, photocopying, paper and envelopes which may be expenses incurred by a responding party, and should be compensated in the interests of justice.

For members of the bar to submit no certification of named defendants recounting they did not assault plaintiff or deprive him

of adequate medical care, and to instead to resort to a bureaucratic defense tantamount to urging it was constitutional to beat a prisoner senseless and deprive him of any treatment, if some other prison officials were clever enough to invent a host of procedural hurdles requesting remedy of this within certain time, and resort to forms not in his possession.

This is not justice and game playing and technical lawyering at its worst. The court should have no appetite for this, and deal with it swiftly to send a stern message to its authors, and the attorneys who concocted it on their clients' behalf prior to it continuing to plague the judiciary as part of the standard arsenal of shady tactics at the ready disposal of unscrupulous practitioners who have the audacity to resort to it.

## CONCLUSION

For all of the foregoing reasons, the plaintiff respectfully requests that this Honorable Court deny defendants' Motion for Summary Judgment, and impose sanctions for their tactics.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF PRO SE.

Mr. Shawn L. Robinson
#430720 - OS01503529
P.O. Box 861
Trenton, NJ 08625-0861

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July 2007 that a copy of the foregoing (Plaintiff's Memorandum of Law) will be mailed to all counsel on record, via my unit staff to the following:

Ms. Ann E. Lynch, Esq.
Attorney General Office
110 Sherman Street
Hartford, CT  06105

Mr. Robert A Rhodes, Esq.
Halloran & Sage,  LLP
315 Post Road West
Westport, CT  06880

MR.  SHAWN L. ROBINSON
The Plaintiff  Pro Se